Juan Luis GARCIA, Appellant,

v.

The STATE of Texas.

No. 2057-99.

Court of Criminal Appeals of Texas.

April 18, 2001.

**528**

Mary Samaan, Rosa A. Eliades, Houston, for appellant.

Alan Curry, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

### OPINION

KELLER, P.J., delivered the unanimous opinion of the Court.

Today we confront the following question: Does a small child's looking back several times at a following police car, by itself, give rise to a reasonable suspicion that the child is not wearing a seat belt? We answer that question "no."

### A. Background

On the morning of December 12, 1996, Pasadena police officer Larry Candelari, responding to an anonymous tip that appellant possessed a substantial amount of marijuana, placed appellant's trailer home under surveillance. Officer Candelari soon observed appellant, accompanied by a small child and an adult male, leave the trailer home and drive away in a pickup truck. Officer Candelari began a discreet pursuit of appellant that continued from Pasadena into South Houston. At that point, Officer Candelari requested assistance from the South Houston Police Department to conduct a stop of appellant's truck. Officer D.L. Sills responded to this request and followed appellant's truck for approximately two blocks. During this time period, Officer Sills noticed that a child, who was the middle passenger, "looked back" at him several times.

This comment that the child "looked back" was made by Officer Sills at the motion to suppress hearing in the following colloquy concerning the possible existence of a traffic violation:

PROSECUTOR: How long were you behind the small pickup truck before you stopped him?

SILLS: Probably a good two blocks.

PROSECUTOR: Okay. And during that time period, did you observe anything, to you, that might be a traffic violation or that you knew to be a traffic violation?

SILLS: The middle passenger, small child, looked back at me several times.

PROSECUTOR: Okay. And what about that indicated that there might be a traffic violation?

SILLS: The traffic violation would be the child was not wearing a seat belt.

PROSECUTOR: And based on the request from Pasadena and that possible traffic violation, did you stop the vehicle?

SILLS: Yes, sir.

After Sills stopped appellant's vehicle and approached, he observed that appellant (the driver) and the child were, at that time, wearing seat belts. However, the adult passenger appeared to be just holding his unlocked seat belt buckle across his body. Sills then determined that appellant was unable to provide any proof of insurance. Immediately afterwards, Officer

Candelari approached and questioned appellant regarding the possible possession of marijuana. Appellant eventually consented to a search of his residence and another car. Over four hundred pounds of marijuana were ultimately recovered. As a result, appellant was charged with felony possession of marijuana.[1] He pleaded guilty after the trial court denied his motion to suppress, and punishment was assessed at five years in prison.

## B. Court of Appeals opinion

Appellant timely appealed. Finding that the seizure of appellant was unlawful for several reasons, the Court of Appeals reversed.[2] The Court of Appeals initially held that the anonymous tip and Officer Candelari's personal observations were insufficient to justify an investigative detention of appellant based on his alleged possession of marijuana.[3] For three reasons, the court also found that Officer Sills possessed insufficient justification for conducting an investigative detention based upon a traffic violation. First, the court held that Sills stopped appellant's vehicle *only* at the request of Pasadena police and not because of the alleged traffic violation.[4] Second, the court found that Officer Sills lacked reasonable suspicion to believe that the child was not wearing a seat belt.[5] Third, the court held that, even if the initial stop were valid, any continued detention of appellant, after it was determined that the child was wearing a seat belt, was unreasonable and, therefore, unlawful.[6] Based upon the unlawfulness of the initial stop and detention, the Court of Appeals suppressed the marijuana evidence.[7]

## C. The State's Contentions

In its brief, the State challenges the Court of Appeals's three holdings regarding the alleged traffic violation. The State complains that the Court of Appeals improperly used Sills's cross-examination testimony to support its contention that the alleged seat belt violation was not a ground for the stop. The State contends that the trial court, in its discretion, could have believed Sills's direct testimony, indicating that the alleged seat belt violation was a ground for the stop, and ignored the conflicting cross-examination testimony. The State also contends that Sills's subjective belief regarding the purpose of the stop was irrelevant and that, under the law, there need only be an objective basis for the stop.

In response to the Court of Appeals's second holding, the State contends that the record contains more than that the child "looked back" at the officer:

> However, the officer did not merely testify that the child looked back at him. The officer testified that the child looked back at him several times *in such a*

1. Tex. Health & Safety Code § 481.121(a), (b)(5).

2. *Garcia v. State*, 3 S.W.3d 227 (Tex.App.— Houston [14th Dist.] 1999).

3. *Id.* at 239–240. The State, in its petition, does not contest this particular holding, and therefore, we express no opinion on the matter.

4. *Id.* at 240–241.

5. *Id.* at 241.

6. *Id.*

7. Although the failure to produce proof of insurance and appellant's subsequent consent to search were potential bases for arrest or further investigation, the Court of Appeals held that they were both fruits of the unlawful stop and detention and that there was insufficient attenuation of the taint. *Id.* at 241–243. The State does not challenge the Court of Appeals's holding regarding these matters and we do not address them.

*manner as to reveal that he was not wearing a seat belt.*

(Emphasis in State's brief). The State further argues that absolute certainty is not required to establish reasonable suspicion.

Finally, in response to the Court of Appeals's third holding, the State contends that the adult passenger's failure to wear a seat belt constituted an independent basis for continuing the investigation. In addition, the State contends that an officer may always demand identification, a valid driver's license, and proof of insurance, even if the original basis for the stop has already disappeared.

### D. Analysis

 "Reasonable suspicion" exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.[8] This standard is an objective one: there need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant.[9] The reasonable suspicion determination is made by considering the totality of the circumstances.[10] In conducting this totality of the circumstances determination, we use a bifurcated standard of review: (1) giving almost total deference to a trial court's determination of historical facts and application of law to fact questions that turn on credibility and demeanor, and (2) reviewing *de novo* application of law to fact questions that do not turn upon credibility and demeanor.[11] In other words, we give almost total deference to the trial court in determining what the actual facts are, and then we review *de novo* whether those facts are sufficient to give rise to reasonable suspicion. Because reasonable suspicion is an objective determination, the State is correct in arguing that Sills's motives for conducting the stop were irrelevant to the validity of the stop. The Court of Appeals erred in holding that the validity of the stop depended on whether the alleged traffic violation was a subjective reason for the stop. Moreover, the State is also correct in contending that an independent basis for investigation developed after the stop was made. Once the vehicle was stopped, Sills saw that the adult passenger, in violation of the law, was not wearing his seat belt. The Court of Appeals erred in holding that there was no basis for continuing the investigation after the stop. However, the question remains whether reasonable suspicion (consisting of objective, articulable facts) existed to stop the vehicle in the first place.

 The State is correct that it need not establish with absolute certainty that a crime has occurred in order to show reasonable suspicion. Nevertheless, the State was required to elicit testimony of sufficient facts to create a reasonable suspicion that the child was not wearing a seat belt. The State contends that the record in this case shows more than the child looking back, but the State reads too much into the record. The quoted passage set out earlier in this opinion is the *only* portion of the record that describes the child's behavior while appellant was being followed by Sills. Officer Sills did not in any way qualify the manner in which the child "looked back." He simply concluded from the child's looking back that the child might

8. *Woods v. State,* 956 S.W.2d 33, 35, 38 (Tex. Crim.App.1997).

9. *Garcia v. State,* 827 S.W.2d 937, 943–944 (Tex.Crim.App.1992).

10. *Woods,* 956 S.W.2d at 38.

11. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.App.1997).

not have been wearing a seat belt. The State seems to have been under a similar misimpression before the trial court. There, the prosecutor contended that Sills "did observe the child turn around and look back at him several times." However, nothing in the record supports the notion that the child "turned around."

At best, one might argue that Sills's conclusion that the child may not have been wearing a seat belt was an implied contention that the child looked back in a certain manner suggestive of not wearing a seat belt. But, while a contention that the child looked back in a suggestive manner may be *consistent* with Sills's testimony, such a contention goes beyond the realm of reasonable inference. If Sills did indeed mean more than the "child looked back," when he made that statement, he gave neither the trial court, nor this Court, any objective way of determining what else he may have meant. All that can be truly ascertained is that (1) the officer observed a certain fact (the child "looked back"), and (2) the officer concluded that this fact established the requisite reasonable suspicion (Sills's conclusion that there may have been a seat belt violation). But this kind of testimony could be given in any case and could simply reflect an officer's mistaken belief that a certain fact possesses a tendency to create reasonable suspicion. Determining what circumstances give rise to reasonable suspicion, however, is something that appellate courts ultimately must do: "the legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is

therefore necessary if appellate courts are to maintain control of, and to clarify the legal principles." [12] Hence, we will not use Sills's legal conclusion that a seat belt violation may have occurred to imply more than what his testimony reveals: that the child looked back several times. The question, then, is whether the child looking back several times is enough to establish reasonable suspicion for a seat belt violation.

We have reviewed out-of-state cases involving the question of whether an officer possessed reasonable suspicion to stop for a seat belt violation, but none of these cases involved as sparse a record as we find in the present case. Several cases have held that reasonable suspicion is established when the officer testifies that he had a clear and unobstructed view of the defendant not wearing a seat belt.[13] A couple of other cases have held that the apparent absence of a shoulder harness constitutes reasonable suspicion to stop even if it is possible that the particular model of car is exempt from shoulder harness requirements or that an unusual configuration of the shoulder harness in a particular car hides it from rear view.[14]

In the present case, however, all the record shows is that the child "looked back" several times. We hold that this fact is simply not enough to give rise to reasonable suspicion that the child was not wearing a seat belt. Given the record before us, we find that there was insufficient evidence to establish reasonable suspicion for

12. *Id.* at 87 (quoting *Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

13. *State v. Milsap,* 243 Ga.App. 519, 528 S.E.2d 865, 867 (2000); *United States v. Villa-Chaparro,* 115 F.3d 797, 801 (10th Cir.), *cert. denied,* 522 U.S. 926, 118 S.Ct. 326, 139

L.Ed.2d 252 (1997); *State v. Predka,* 555 N.W.2d 202, 206 (Iowa 1996).

14. *Thomas v. Dickel,* 213 F.3d 1023, 1025 (8th Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 571, 148 L.Ed.2d 489 (2000); *Kodani v. Snyder,* 75 Cal.App.4th 471, 89 Cal.Rptr.2d 362, 366 (1999).

the stop based upon the child's failure to wear a seat belt.

The judgment of the Court of Appeals is affirmed.