COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 TYRONE EZELL
 YOUNG,
  
                             Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-03-00345-CR
  
 Appeal from the
  
 358th District Court
  
 of Ector County, Texas
  
 (TC#D-27,000)
 
 




 

MEMORANDUM
OPINION

Tyrone Ezell Young was indicted for
possessing more than one gram but less than four grams of cocaine.  He pleaded guilty and was convicted and
sentenced to four years= imprisonment in accordance with a plea agreement.  On appeal, he argues that the trial court
erred by denying his motion to suppress. 
We reverse and remand.

Facts








Officers George, Gibson, and Potter
of the Odessa Police Department were conducting surveillance for narcotics
activity.  Gibson and Potter were on
foot, while George was in a patrol car parked out of view.  Gibson and Potter radioed George, requesting
that he stop a vehicle.  In response to
this request, George pulled over a car driven by Young.  Immediately after pulling over, Young exited
the car and made movements that made George suspect he was trying to conceal
narcotics or a weapon.   George patted
him down and noted that he did not have a driver=s license.  At that point, George arrested Young for not
having a valid license.  George also
noticed that a passenger in the car was a person who had been tried for
numerous felonies.  George and Gibson
searched the car and found cocaine.

Applicable
Law








To make an investigatory stop of a
vehicle, an officer must have reasonable suspicion, i.e., specific,
articulable facts that, when combined with rational inferences from those facts
and the officer=s experience and training, would lead an officer reasonably
to suspect that a person in the vehicle was, is, or is about to be engaged in
criminal activity.  Terry v. Ohio,
392 U.S. 1, 20-21, 88 S.Ct. 1868, 1879-80, 20 L.Ed.2d 889 (1968); Garcia v.
State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); Carmouche v. State,
10 S.W.3d 323, 328 (Tex. Crim. App. 2000); Hoag v. State, 728 S.W.2d
375, 380 (Tex. Crim. App. 1987); Martin v. State, 104 S.W.3d 298, 300
(Tex. App.--El Paso 2003, no pet.); Klare v. State, 76 S.W.3d 68, 72
(Tex. App.--Houston [14th Dist.] 2002, pet. ref=d). 
An inarticulate hunch, suspicion, or good faith of the officer is never
sufficient to justify the officer in ordering a subject to stop his
vehicle.  Hoag, 728 S.W.2d at
380.  When several officers are working
together, we consider the information known collectively by all the
officers.  Id.; State v.
Jennings, 958 S.W.2d 930, 933 (Tex. App.--Amarillo 1997, no pet.).  If one officer detains a person based on a
radio dispatch from another officer, the officer requesting the detention must
have reasonable suspicion to justify the detention.  Jennings, 958 S.W.2d at 933.

When a defendant challenges the
legality of a warrantless search or seizure, the State bears the burden of
proving by a preponderance of the evidence that the search or seizure was
legal.  See McGee v. State, 105
S.W.3d 609, 613 (Tex. Crim. App.), cert. denied, 124 S.Ct. 536, 157
L.Ed.2d 410 (2003); Moreno v. State, 124 S.W.3d 339, 346 (Tex.
App.--Corpus Christi 2003, no pet. h.); State v. Giles, 867 S.W.2d 105,
108 (Tex. App.--El Paso 1993, pet. ref=d). 
When, as in this case, the trial court does not make explicit findings
of fact in ruling on a motion to suppress, we review the evidence in the light
most favorable to the trial court=s ruling.  Carmouche, 10 S.W.3d at 327-28.  We review de novo the trial court=s application of the law of search
and seizure.  Id.  In conducting our review, we consider the
totality of the circumstances.  Garcia,
43 S.W.3d at 530.

Issue on
Appeal








In his sole issue, Young argues that
the trial court erred by denying his motion to suppress because George did not
have reasonable suspicion to stop his car. 
Thus, we must consider the totality of the circumstances to determine
whether the State proved by a preponderance of the evidence that when George
stopped Young=s car, the officers had specific,
articulable facts that, when combined with rational inferences from those facts
and their experience and training, gave them a reasonable suspicion that the
occupants of the car were connected with criminal activity.

Discussion

Officer
George was the only witness at the suppression hearing.  The following is his entire testimony
regarding the events that preceded his stopping Young=s car:

 

Q:        [D]o
you have any specific assignment within the police department?

 

A:        Currently
assigned to Street Crimes Unit.

 

Q:        And how
were you working on May the 24th of 1998?

 

A:        On a
patrol division.

 

Q:        And on
that date, did you have an occasion to be in the vicinity of the 400 block of
Snyder?

 

A:        Yes.

 

.   .   .

 

Q:        And
what was your purpose for being there, please, sir?

 

A:        Conducting
surveillance of narcotics activity.

 

Q:        And
that was at 404 Snyder; is that correct?

 

A:        Correct.

 

.   .  .

 

Q:        And who
was with you at that time?

 

A:        Officer
Scott Gibson and Gary Potter.

 








Q:        And
tell me, when you all do this sort of thing, how do you do it, specifically in
this case.  Were you together, did you
separate?  How do you do it?

 

A:        Usually
we do it different ways but usually the most basic way is some persons are out
on foot because you can=t be detected as easily on foot as you can in that
patrol car.  They will watch a certain
residence from an alley or wherever they may be at.  We usually keep somebody in a patrol car a
few blocks away out of the area, or just where they can=t be seen so to go undetected.

 

Q:        And in
this case, were you on foot looking or was someone else?

 

A:        No, I
was in a patrol car parked in the alley where they couldn=t see me.

 

Q:        Okay.  And who was on foot?

 

A:        Officer
Gibson and Officer Potter.

 

Q:        Now
then, do they have communication with you?

 

A:        Correct,
with the police radio.

 

Q:        And what
is normal?  If they see something that
is--if they see something that would attract your attention, what do they do?

 

A:        They
see activity that is indicative of street level narcotics, they=ll advise me of persons, the best description they can
or the best vehicle description they can, where that vehicle is leaving, what
direction they are going.  Usually I try
to wait until that vehicle is out of that area and we will initiate a stop to
investigate.

 

Q:        And
what type of thing do you look at?  If I
were looking at a particular house suspicious of narcotics activities, what
would I look for?

 

A:        We
usually look for a lot of frequent traffic, short term traffic, people pulling
up, stopping for less than five minutes, coming back out, leaving, that type of
activity.

 








Q:        These
people make contact with the residence?

 

A:        Yes.

 

Q:        Did
that happen in this case?

 

A:        Yes.  We made a stop prior to that evening from
that same residence.

 

Q:        And
when you made the prior stop, what happened?

 

A:        We didn=t locate any narcotics during that stop.

 

Q:        Did you
then have an occasion to stop a vehicle that was occupied by Tyrone Young?

 

A:        Yes.

 

.   .  .

 

Q:        Why did
you stop him?  Why did you stop Mr.
Young?

 

A:        Officer
Potter and Gibson relayed to me over the radio that that car had left the
residence after a short term traffic there, had pulled up, stayed there a short
amount of time and left.  They requested
that I stop that vehicle.  

            








George=s testimony established that
frequent, short-term traffic at a residence is a sign of narcotics activity;
that the officers, for reasons unknown, were conducting surveillance for
narcotics activity at a residence; that on a prior occasion, they had stopped
an automobile coming from that residence and found no narcotics; that Potter
and Gibson instructed George to stop an undescribed car because it had pulled
up to the residence, stayed a short amount of time, and left; and that in
response to this request, George pulled over a car driven by Young.  George=s testimony did not reveal why the
officers singled-out the particular residence or area for surveillance, what
was the description of the car Potter and Gibson asked George to stop, or what
the occupants of that car did at the residence (e.g, went inside, talked
to someone, or exchanged items). 
Although George arrested Young for failure to have a valid driver=s license, George did not testify
that he suspected Young had committed that offense, or any traffic offense,
when he pulled over Young=s car.  George did not
provide any information about the surrounding circumstances, such as the time
of day, whether the officers had reason to suspect that there were drugs at the
residence, or whether the area was known for drug activity.  He did not describe his experience and
training, nor did he describe the experience and training of Potter and Gibson.

Accepting all of George=s testimony as true, drawing all
rational inferences from his testimony in favor of the trial court=s ruling, and considering the
totality of the circumstances, we conclude that the State failed to prove by a
preponderance of the evidence that the officers had the requisite reasonable
suspicion to stop Young=s car.  Cf. Klare,
76 S.W.3d at 71, 73-75, 77 (holding that reasonable suspicion did not exist
when the officer stopped the defendant=s car at 2:30 a.m. near a shopping
center where the businesses were closed and where there had been burglaries in
the past); Jennings, 958 S.W.2d at 933 (holding that reasonable
suspicion did not exist when the officer relied exclusively upon a radio
dispatch stating that the defendant was a suspect in a domestic 








dispute).  Accordingly,
we sustain Young=s sole issue, reverse his conviction, and remand for further
proceedings.

SUSAN
LARSEN, Justice

April 15, 2004

 

Before Panel No. 4

Barajas, C.J., Larsen, and
McClure, JJ.

 

(Publish)