IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1946-03






MATTHEW FORD, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


HARRIS COUNTY





 Keasler, J., delivered the opinion of the Court in which Meyers, Price, Johnson,
Hervey, and Holcomb, JJ., joined. Keller, P.J., filed a dissenting opinion in which
Womack and Cochran, JJ., joined. 

 

O P I N I O N 



 In a motion to suppress evidence, Ford asserted that his initial detention for failure to
maintain a proper following distance was not supported by reasonable suspicion. The trial
court overruled Ford's motion. The court of appeals held the stop was valid by concluding
that the evidence was sufficient to establish reasonable suspicion. Having found the record
devoid of specific, articulable facts to support the officer's conclusion, we reverse.I. Factual and Procedural History

 Texas State Trooper Andrew Peavy pulled Matthew Ford's vehicle over for following
another car too closely on Highway 290 outside of Houston in violation of Texas
Transportation Code § 545.062(a). Section 545.062(a) provides, 

 An operator shall, if following another vehicle, maintain an assured clear
distance between the two vehicles so that, considering the speed of the
vehicles, traffic, and the conditions of the highway, the operator can safely
stop without colliding with the preceding vehicle or veering into another
vehicle, object, or person on or near the highway. (1) 


 When Ford lowered his passenger-side window, Peavy noticed a strong odor of
marijuana. Peavy took Ford's driver's license and returned to his patrol car to run a check
on Ford's license and to issue a warning ticket for the traffic violation. He approached the
car again and asked Ford to exit his vehicle. Ford initially refused Peavy's request for
permission to search his car. Peavy testified that while he was waiting for backup Ford
consented to a search. After another state trooper arrived, Peavy conducted a search of
Ford's car. Peavy's search produced a bottle containing codeine, and another bottle
containing codeine mixed with soda. Ford was then placed under arrest. When Peavy could
not discover the source of the marijuana odor, he requested the assistance of a canine unit. 
The canine unit's search revealed 55 grams of marijuana in the car's console. 

 Ford was subsequently indicted for felony possession of codeine, a controlled
substance, weighing at least 400 grams. Ford filed a motion to suppress evidence
challenging, among other things, the reasonable suspicion required for the initial detention. 
At the suppression hearing, the trial court heard testimony from Peavy, the officer who
responded to Peavy's request for back-up, and Ford himself. Peavy, the only officer whose
testimony related to the facts surrounding the stop, testified to the events leading up to the
stop:

 Q: And on September 2nd of 2001 did you notice something that caught your eye around
5:47 at night?

A: Yes, ma'am. I was patrolling and I saw a maroon utility vehicle following too close
behind--I was patrolling 290 westbound. I saw a maroon GMC or Chevy utility
vehicle following a white car, following too close.

Q: And where were you when you noticed this vehicle?

A: I was directly behind him.

Q: And at the time that you noticed this, what did you do?

A: I activated my emergency overheads and the vehicle pulled over.

. . .

Q: And when you were approaching the vehicle, what were your intentions before you
approached the vehicle?

A: To talk to him about his violation he had committed.

Q: Which violation is that?

A: Following too close. 

 This quoted portion was the only testimony given by Peavy describing the
circumstances leading up to Ford being stopped. There was no other testimony relevant to
Ford's driving. Peavy's testimony also established that he was a certified peace officer
serving the Department of Public Service for four years enforcing traffic and criminal laws. 
The remainder of his testimony focused on the search of Ford's vehicle and whether Ford
consented to the search. Ford also testified at the suppression hearing. Although he testified
that a car "squeezed in" between his car and the car in front of him, Ford stated that he was
not following too close.

 Concluding that the traffic stop was supported by reasonable suspicion, the trial judge
denied Ford's motion to suppress. Under a plea agreement, Ford pled guilty to a reduced
second-degree felony possession of a controlled substance charge. The court deferred
adjudication and placed Ford on probation for nine years with a $500 fine. Ford appealed
the trial court's order denying his motion. 

II. Court of Appeals

 The Court of Appeals overruled Ford's point of error and found that in light of the
evidence presented at the suppression hearing, the trial court did not err in denying the
motion to suppress. (2) The court stated that "Trooper Peavy's experience and training
qualified him to make a judgment on whether, 'considering the speed of the vehicles, traffic
and the conditions of the highway,' [Ford] was following the car in front of him too
closely." (3) The court stated "Peavy testified that he saw [Ford] following another car at a
distance that Peavy believed was insufficient and thus, in violation of the statute." The court
also stated that the trial court was entitled to believe the officer's testimony while discounting
Ford's testimony. The court additionally reasoned that Peavy's determination that Ford had
violated section 545.062(a) "went unchallenged at the suppression hearing." In further
illustrating this point, the court highlighted Ford's failure to "press Trooper Peavy on what
factors might have led Peavy to make the determination that [Ford] was following too
closely" or "attempt to discredit Peavy's expertise or qualifications to make such a
determination." (4) 

III. AnalysisBurden of Proof

 To suppress evidence on an alleged Fourth Amendment violation, the defendant bears
the initial burden of producing evidence that rebuts the presumption of proper police
conduct. (5) A defendant satisfies this burden by establishing that a search or seizure occurred
without a warrant. (6) Once the defendant has made this showing, the burden of proof shifts
to the State where it is required to establish that the search or seizure was conducted pursuant
to a warrant or was reasonable. (7) 

 In this case, the suppression hearing began with the State stipulating that this case
involved a warrantless arrest. Because the stipulation shifted the burden of proof to the State,
whether Ford attempted to refute the existence of sufficient suspicion is irrelevant to the
reasonable-suspicion analysis. Contrary to both the court of appeals's and the dissent's
position, Ford was not charged with the responsibility of challenging whether Peavy had
specific facts warranting the detention. The State bore the burden of establishing the
reasonableness of the warrantless detention. (8)

Reasonable Suspicion

 An officer conducts a lawful temporary detention when he has reasonable suspicion
to believe that an individual is violating the law. (9) Reasonable suspicion exists if the officer
has specific, articulable facts that, when combined with rational inferences from those facts,
would lead him to reasonably conclude that a particular person actually is, has been, or soon
will be engaged in criminal activity. (10) This is an objective standard that disregards any
subjective intent of the officer making the stop and looks solely to whether an objective basis
for the stop exists. (11) A reasonable-suspicion determination is made by considering the
totality of the circumstances. (12) 

 In evaluating the totality of the circumstances, we use a bifurcated standard of review. 
We give almost total deference to the trial court's determination of historical facts and review
de novo the trial court's application of law to facts not turning on credibility and demeanor. (13) 
Because the trial court did not make explicit findings of fact in this case, we review the
evidence in a light most favorable to the trial court's ruling and assume that the trial court
made implicit findings of fact supported by the record. (14)

Application

 Ford asserts that the court of appeals erred in holding the evidence presented at the
suppression hearing supported the trial court's finding of reasonable suspicion. We agree. 

 The court of appeals stated that "Trooper Peavy testified that he saw [Ford] following
another car at a distance that Peavy believed was insufficient and, thus, in violation of the
statute." While this may be a permissible interpretation of Peavy's "following too close"
testimony, it does not change its conclusive character into specific, articulable facts. And
attempting to do so requires a strained reading of the record. As indicated from Peavy's
testimony, Peavy only stated that Ford was "following too close." The record reveals an
absence of any facts allowing an appellate court to determine the circumstances upon which
Peavy could reasonably conclude that Ford actually was, had been, or soon would have been
engaged in criminal activity. (15) Instead, the trial court was presented only with a conclusory
statement that Ford was violating a traffic law. We do not quarrel with the notion that Peavy
may have in fact believed that Ford was following another car too closely. Nor do we dispute
that the trial judge is free to believe or disbelieve Peavy's testimony. But without specific,
articulable facts, a court has no means in assessing whether this opinion was objectively
reasonable. 

 When a trial court is not presented with such facts, the detention cannot be "subjected
to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of
a particular search or seizure in light of the particular circumstances." (16) Additionally, And 
"[w]hen such a stop is not based on objective criteria, the risk of arbitrary and abusive police
practices exceeds tolerable limits." (17) Allowing a police officer's opinion to suffice in
specific facts' stead eviscerates Terry's reasonable suspicion protection. If this Court were
to hold as the dissent suggests, we would be removing the "reasonable" from reasonable
suspicion. Therefore, we adhere to the principle that specific, articulable facts are required
to provide a basis for finding reasonable suspicion. (18) Mere opinions are ineffective
substitutes for specific, articulable facts in a reasonable-suspicion analysis. 

 The court's opinion further reasoned that the evidence regarding Peavy's training,
experience, and his duties enforcing traffic laws qualified him "to make a judgment as to
whether, 'considering the speed of the vehicles, traffic and the conditions of the highway,'
[Ford] was following the car in front of him too closely." It is true that law enforcement
training or experience may factor into a reasonable-suspicion analysis. (19) The United States
Supreme Court has stated, "objective facts, meaningless to the untrained, can be combined
with permissible deductions from such facts to form a legitimate basis for suspicion of a
particular person and for action on that suspicion." (20) But reliance on this special training is
insufficient to establish reasonable suspicion absent objective factual support. (21) 

Conclusion

 The evidence before the trial court indicated only that in Peavy's judgment, Ford was
following another car too closely in violation of Transportation Code § 545.062(a). The
State failed to elicit any testimony pertinent to what facts would allow Peavy to objectively
determine Ford was violating a traffic law in support of his judgment. Even viewing the
evidence in the light most favorable to the trial court's ruling, the record does not support a
finding of reasonable suspicion. Because the record fails to reveal any objective facts, we
hold that the trial court erred in denying Ford's motion to suppress.

 We reverse the judgment of the court of appeals and remand the case to the trial court
so that Ford can answer the charges in the indictment. 


PUBLISH

DATE DELIVERED: March 9, 2005


1. Tex. Transp. Code Ann. § 545.062(a) (Vernon Supp. 2004).
2. Ford v. State, No. 01-02-00643-CR, slip op. at 10-11, 2003 WL 22310499, at *3
(Tex. App.--Houston [1st Dist.] 2003, pet. granted).
3. Id.
4. Id.
5. Russell v. State, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986).
6. Bishop v. State, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002).
7. Id.
8. See id.
9. Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002).
10. Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).
11. Id.
12. Id
.
13. Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997).
14. Balentine, 71 S.W.3d at 768.
15. See Garcia, 43 S.W.3d at 530.
16. Terry v. Ohio, 392 U.S. 1, 21 (1967).
17. Brown v. Texas, 443 U.S. 47, 52 (1979).
18. See Balentine, 71 S.W.3d at 768.
19. U.S. v. Cortez, 449 U.S. 411, 419 (1981).
20. Id.
21. See id.