Rodney Darel Russ v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-270-CR

RODNEY DAREL RUSS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Rodney Darel Russ was charged with possession of four or more, but less than two hundred, grams of a controlled substance, methamphetamine.  The trial court denied Russ’s pretrial motion to suppress. Pursuant to a plea bargain, Russ pleaded guilty to the charge.  The trial court sentenced him to seven years’ confinement.  In a single point, Russ argues that the trial court erred by denying his motion to suppress.  We will affirm.

II.  Factual and Procedural Background

At the suppression hearing, Officer William Mack testified that on January 2, 2000, he was patrolling an apartment complex based on an informant’s tip that drug activity was taking place at the complex.  Officer Mack’s supervisor instructed him to watch for a white Dodge truck that was expected to arrive at the complex between 12:30 and 1:00 a.m.  Officer Mack did not see a truck matching the description he was given, and at 2:00 a.m., he was leaving the complex when he saw a white Chevrolet truck make an abrupt right turn into the complex without signaling.  Officer Mack testified that this was a traffic violation.  Officer Mack drove through the complex looking for the truck, and he saw a white Chevrolet truck parked in the complex.  The officer got out of his vehicle and felt the truck’s hood, which was warm.  He pointed his flashlight in the window and saw what appeared to be the burnt remains of several marijuana cigarettes.
(footnote: 2) Officer Mack did not see anyone around the truck, but after he got back into his vehicle to leave, he saw a white male, later identified as Russ, walking towards the truck.  The officer rolled down his window and asked Russ if the truck belonged to him; Russ responded that his girlfriend owned the truck.  Officer Mack then asked if Russ had been driving the truck recently, and Russ responded that he had.  Officer Mack got out of his vehicle, told Russ that he had observed “the vehicle commit a traffic violation,” and asked to see Russ’s driver’s license.  The officer radioed for dispatch to run a license check and to send an assist officer.    

Officer Tim Brown arrived shortly thereafter, and Officer Mack asked him to wait with Russ while the dispatcher told Officer Mack the results of the license check.  Officer Brown testified that while he was waiting with Russ, Russ seemed “jittery, real nervous, like somebody that was high on methamphetamine.”  Officer Brown noticed a tin box that was partially opened hanging out of Russ’s back pocket, and the officer asked Russ what was in the tin.  Russ said, “There is nothing,” took the tin out of his pocket, opened it, and immediately turned it upside down.  Officer Brown testified that he saw a green leafy substance fall to the ground and that he took the tin away from Russ because he “realized at that point that he was destroying evidence.”  Officer Brown testified that the tin still contained a residual amount of the substance and that the tin smelled of marijuana.    

In the meantime, the dispatcher told Officer Mack that Russ’s license was clear.  Officer Mack returned, and Officer Brown showed him the tin.  Officer Mack also determined that the substance in the tin looked and smelled like marijuana.  Officer Brown told Russ to place his hands on the car, and when Officer Mack “came up behind [Russ] to do a search of his person and take him into custody, he ran.”  The officers chased after Russ and observed Russ “digging in his pocket” as he ran.  Both officers testified that they saw Russ throw an object and then fall down.  

Officer Mack handcuffed Russ, searched the area, and found a cellular phone and a large baggie filled with five other baggies containing a white crystallized substance lying a few feet from Russ.  A presumptive test on the substance revealed that it was methamphetamine.   

III.  Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

When reviewing a trial court’s ruling on a mixed question of law and fact, the court of appeals may review de novo the trial court’s application of the law of search and seizure to the facts of the case.  
Estrada
, 154 S.W.3d at 607.  When there are no explicit findings of historical fact, the evidence must be viewed in the light most favorable to the trial court’s ruling.  
Id
.

We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.

IV.  No Error in Denying Motion to Suppress

In his sole point, Russ contends that the trial court erred by denying his motion to suppress because the State failed to prove that Russ had violated a traffic law before Officer Mack approached him.  Specifically, Russ contends that the State failed to present evidence that Russ was driving “on a highway or street that was publicly maintained,” a requirement of the offense of failure to use a turn signal.
(footnote: 3)  

The reasonableness of an investigative detention is determined by a two-prong test:  (1) whether the officer’s action was justified at its inception and (2) whether the detention was reasonably related in scope to the circumstances that justified the inference in the first place.  
See Terry v. Ohio
, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 1879 (1968); 
Garcia v. State
, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).  Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged, is engaged, or will soon engage in criminal activity.  
Garcia
, 43 S.W.3d at 530.  This standard is an objective one, and there need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant. 
 Id.
 

Here, Officer Mack articulated specific facts upon which he based his investigative detention of Russ:  Officer Mack saw what he believed to be burnt marijuana cigarettes in the truck’s ashtray, and Russ admitted he had recently been driving the truck.  
See id.  
Applying the appropriate standard of review, we hold that, based on the totality of the circumstances, Officer Mack reasonably suspected that Russ had engaged in criminal activity.  
See Carmouche
, 10 S.W.3d at 327; 
Guzman
, 955 S.W.2d at 89.  Because we have determined that Officer Mack had reasonable suspicion to detain Russ because he observed what appeared to be marijuana cigarettes, we need not address Russ’s contention that his alleged failure to signal when turning did not provide Officer Mack with reasonable suspicion or probable cause to stop Russ.
(footnote: 4)  
See
 
Tex. R. App. 
P. 47.1.  We overrule Russ’s sole point.

V.  Conclusion

Having overruled Russ’s sole point, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: WALKER, J.; CAYCE, C.J.; and DAUPHINOT, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: March 16, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
On direct examination, Officer Mack testified that he looked inside the truck “to see if there was anybody in it,” but he did not mention that he saw what appeared to be marijuana cigarettes in the truck.  On cross-examination, however, he testified that he saw the alleged marijuana cigarettes.  

3:
See 
Tex. Transp. Code Ann. 
§§ 542.001, 545.104 (Vernon 1999).

4:
Although the trial court’s findings of fact and conclusions of law included the conclusion that “Officer Mack had reasonable suspicion to detain [Russ] to further investigate [the] 
traffic offense
,” we are required to sustain the trial court’s ruling if it is correct on any theory of law applicable to the case.  [Emphasis added.]  
See Romero
, 800 S.W.2d at 543-44.  Here, reasonable suspicion to detain Russ in the parking lot existed based on another fact—that the officer saw what looked like marijuana cigarettes in the truck’s ashtray.  
See Singleton v. State
, 91 S.W.3d 342, 347 (Tex. App.—Texarkana 2002, no pet.) (holding that the court “need not limit [its] review to the violations the officer cited in executing the stop”).