

**NUMBER 13-14-00374-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RICHARD JAMAL NETHERLY,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

**On appeal from the 128th District Court
of Orange County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Chief Justice Valdez**

By one issue, appellant Richard Jamal Netherly contends that the trial court erred in denying his motion to suppress drug evidence under the Fourth Amendment of the United States Constitution. We reverse and remand.

# I.    Background[1]

On November 26, 2011, a police officer conducted a traffic stop on a truck driven by Netherly.  The officer testified that as he approached the vehicle from the passenger side, he recognized Netherly from the past.  The officer recalled that approximately one year earlier, in December 2010, he arrested Netherly on an unrelated traffic charge and that he inventoried a fanny pack found inside Netherly's vehicle incident to that arrest.  Netherly was ultimately acquitted of the traffic charge after a trial.

Recognizing him from the past, the officer asked Netherly to step out of the truck.  At the suppression hearing, the trial court admitted, without objection, a dash-cam video of the traffic stop.  The dash-cam video shows that Netherly exits his truck and steps onto the pavement, but then reaches back into his truck for a few seconds while standing on the pavement.  Although the dash-cam video does not capture Netherly's movement inside the truck, the officer, who was watching Netherly through the passenger window, testified that Netherly briefly picked up his phone, pushed some buttons, and set it back down on the seat.  The officer explained that before Netherly picked up his phone, he reached for "something" further towards the passenger seat of the truck, which exposed a fanny pack not previously seen by the officer when he initially made contact with Netherly.  Regarding the significance of this fanny pack, the officer testified:

> From the past investigation that I have done into [Netherly], I knew that it was common for [Netherly] to carry a fanny pack when he transported cocaine in his vehicle or on his person.  So, when I saw the fanny pack, it was significant to me because, as I said, I have had information in the past that he carried cocaine in it.

---

[1] This case is before the Court on transfer from the Ninth Court of Appeals pursuant to a docket equalization order issued by the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.)

After exiting the truck, Netherly met with the officer in front of the officer's police car. The officer briefly informed Netherly about the traffic-related reason for the stop and then returned to his police car to summon a canine through dispatch.

After calling for a canine, the officer informed Netherly that he would receive only a warning citation for the traffic stop. While filling out the paperwork for the warning citation, Netherly answered some routine questions concerning his work address and phone number. After completing the paperwork, the officer handed Netherly the warning citation, at which point the following exchange took place:

Officer:     [When] you were getting out of your truck [,] what were you moving around?

Netherly:     A cell phone.

Officer:     I saw you place the cell phone on the seat . . .

Netherly:     Yeah. And I, and I sit [sic] on it, it started to [dial] a number and I was just hitting the end button.

. . .

Officer:     You mind if I check your truck?

When Netherly refused to consent to a search of his truck, the officer informed him that a canine was on the way and that he would be "back on the road" soon thereafter. Approximately twenty minutes later, the canine arrived and alerted to the presence of drugs inside the truck. The officer removed the fanny pack from Netherly's truck and found cocaine inside. Netherly was then arrested for possession of cocaine.

## II.     Discussion

On appeal, Netherly contends that the trial court erred in denying his motion to suppress the cocaine found inside the fanny pack because the officer had no legal reason to detain him after issuing the warning citation.

3

**A. Applicable Law and Standard of Review**

The Fourth Amendment of the United States Constitution forbids a police officer to extend an otherwise-completed traffic stop in order to conduct a canine sniff on a motorist's vehicle unless the officer develops reasonable suspicion connecting the motorist to criminal activity before issuing a warning citation. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1614–16 (2015). Reasonable suspicion in this context means that the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that the motorist actually is, has been, or soon will be engaged in criminal activity. *See Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). The reasonable suspicion determination is made by considering the totality of the circumstances. *See id.*

In assessing whether reasonable suspicion exists, we afford almost total deference to the trial court's determination of historical facts, review the evidence in the light most favorable to the trial court's ruling, and assume that the trial court made implicit factual findings supported by the record. *See State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). However, we review de novo the legal question of whether reasonable suspicion exists given the facts. *See id.*

**B. Analysis**

The issue is whether the officer reasonably suspected Netherly of criminal activity before issuing the warning citation. We now review the pre-warning circumstances relevant to this issue in the light most favorable to the trial court's ruling. *See id.*

4

## 1. The Fanny Pack and Other Activity Inside the Truck

As previously noted, the officer testified that he suspected criminal activity because he saw a fanny pack when Netherly reached for "something" in the truck before picking up his phone and because Netherly allegedly wore a fanny pack when trafficking drugs. However, reasonable suspicion is dependent upon both the content of information possessed by law enforcement and its degree of reliability. *See Alabama v. White*, 496 U.S. 325, 330 (1990). Noticeably absent from the record here is any indication regarding the content and reliability of information connecting the fanny pack to any particular criminal activity on the day of his arrest. Instead, the record indicates that the same officer who arrested Netherly searched his fanny pack the year before, and the State presented no evidence that the officer found anything illegal at that time. Furthermore, the officer did not indicate how long it had been since he acquired "information" about the fanny pack, whether he received the information before or after Netherly's fanny pack was searched the first time, or whether the information came from a reliable source. *See id.* Without articulable facts connecting Netherly's choice of apparel to criminal activity on the day of his arrest, we conclude that the officer had nothing more than a "hunch" that criminal activity was afoot when the officer noticed a fanny pack after Netherly reached into his truck. *See Terry v. Ohio*, 392 U.S. 1, 22 (1968) (observing that reasonable suspicion demands more than an inarticulate "hunch" of criminal activity); *see also Garza v. State*, No. 13-12-00240-CR, 2013 WL 3378325, at *10 (Tex. App.—Corpus Christi July 3, 2013, pet. ref'd) (mem. op., not designated for publication) (concluding that the officer did not articulate any specific facts that would lead a person to reasonably conclude that

5

the act of "reaching" forward in the car during a traffic stop indicates that a person has a weapon or contraband).

## 2. Answers to Routine Questions

The officer also testified that he suspected criminal activity based on Netherly's answers to routine questions. Specifically, the officer testified that Netherly's response to a question about his work address "kind of perked . . . [his] suspicion." The officer elaborated:

> I asked [Netherly] where [his place of work] was located and he thought about it for a few seconds and then he said he thinks that it's located on 1006, which, again, if you work there, I would think you would know where it was. I'm not trying to be funny.

Contrary to the officer's recollection as to what Netherly said, the dash-cam video shows that Netherly actually said "Farm Road 1006" in response to the question about his work address. On cross-examination, the officer admitted he did not know whether Farm Road 1006 was the correct address for the name of the business where Netherly said he worked. As such, it appears that the officer found Netherly's answer "kind of" suspicious because it took him a "few seconds" to recall the exact address. We find no legal authority to indicate that a detainee's otherwise-truthful answer concerning his work address gives rise to reasonable suspicion simply because the detainee takes a "few seconds" to recall the exact address. Netherly's answer to this question does not support reasonable suspicion that criminal activity was afoot on the day of his arrest.

The officer also testified that he asked Netherly for his work number and that Netherly gave a phone number that did not "jive" with the place where he said he worked. However, the dash-cam video clearly shows that Netherly twice clarified for the officer that he had provided his home number and that he did not know his work number.

6

Furthermore, when presented with a written transcript of what was actually said during the traffic stop, the officer acknowledged that Netherly had in fact made this clarification known to him. Netherly's answer to this question does not support reasonable suspicion that criminal activity was afoot on the day of his arrest.

### 3. Drug Trafficking

Finally, the officer testified that he suspected criminal activity because Netherly was allegedly "known" to be involved in drug trafficking. However, the State provided no evidence concerning the source or reliability of information that could support this bald assertion. *See White*, 496 U.S. at 330 (observing that reasonable suspicion depends upon both the content and reliability of information known to law enforcement). Instead, and ironically, the only concrete evidence concerning Netherly's previous interaction with law enforcement showed that one year prior to the night of his arrest, the same officer arrested Netherly on a minor traffic charge—a charge for which Netherly was ultimately acquitted after a trial.

### 4. Summary

In summary, even when the evidence is viewed in the light most favorable to the trial court's ruling, the officer did not reasonably suspect that criminal activity was afoot when he issued the warning citation.[2] *See id.* Therefore, the Fourth Amendment of the United States Constitution forbade the officer to extend the traffic stop in order to conduct

---

[2] Our discussion does not ignore the fact that the officer testified that Netherly became talkative and nervous after being informed that a canine was on the way to the traffic stop. However, the alleged change in Netherly's behavior does not factor into our analysis concerning whether reasonable suspicion existed because Netherly had already received the warning citation when the officer informed him about the canine. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1614–16 (2015).

a canine sniff on Netherly's truck. *See Rodriguez*, 135 S. Ct. at 1614–16. We sustain Netherly's sole issue.

### III. Conclusion

We reverse the judgment of the trial court and remand the case for further proceedings.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
9th day of June, 2016.