**Opinion issued June 27, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00289-CR

————————————

**JONATHAN WILLIAM DAY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from County Criminal Court at Law No. 1**
**Tarrant County, Texas**
**Trial Court Case No. 1498320**

---

## MEMORANDUM OPINION

A jury found appellant, Jonathan William Day, guilty of the misdemeanor

offense of evading arrest or detention, and the trial court assessed his punishment at

220 days in county jail.[1] In three points of error, appellant contends that (1) the evidence was insufficient to support the jury's verdict; (2) the pretrial identification process involving a punishment witness was so suggestive that it tainted the in-court identification of appellant as the suspect in an unadjudicated car chase incident; and (3) the trial court erred in overruling appellant's objection to the testimony of an expert witness who was not on the State's witness list. We reverse.

## Background

On May 15, 2015, C.W. Heizer, Marshal for Richland Hills, arrived at a residence to serve a warrant on a man named Danny Branton. As Heizer sat in his car three houses away finishing paperwork, he saw two bicyclists pull into the driveway of the residence. Concerned that one of the individuals might be Branton, Heizer got out of his car to approach them before they could enter the residence.

As he exited the car, Heizer saw a white SUV followed by a tan truck pass him and pull into the driveway. Appellant, the driver of the white SUV, began talking with one of the bicyclists. Heizer approached the men and asked them where Branton was but got no response. When the driver of the tan truck, Mr. Acorn, started his vehicle, Heizer approached the truck and asked everyone for

[1] Originally appealed to the Second Court of Appeals in Fort Worth, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE § 73.001.

identification. Appellant handed Heizer an ID. Heizer then noticed a woman in the back seat of Acorn's truck. Acorn's front seat passenger got out and walked into the house.

Heizer gathered the individuals' identifying information and began calling in their names and dates of birth to check for warrants. Appellant told Heizer that he needed to go to work and wanted to leave. Heizer replied, "I'm trying to figure everything out. You got to—I just—you got to wait." Appellant then told Heizer that "[h]e had warrants out of Fort Worth," to which Heizer responded, "I'm not worried about a Fort Worth traffic warrant."

Heizer subsequently informed appellant that appellant had a warrant for his arrest out of Haltom City. Heizer allowed appellant to make a phone call but told him that he could not leave. Appellant took off running but was caught two blocks away and arrested.

At the conclusion of trial, the jury found appellant guilty of evading arrest or detention, and the trial court assessed his punishment at 220 days in county jail. This appeal followed.

**Sufficiency of the Evidence**

In his first point of error, appellant contends that the evidence is insufficient to support his conviction for evading arrest or detention because the State failed to prove that Heizer lawfully detained him.

## A. Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

## B. Applicable Law

A person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him. TEX. PENAL CODE § 38.04(a). The lawfulness of the attempted detention is an element of the offense that must be proven by the State. *Guillory v. State*, 99 S.W.3d 735, 741 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

4

A police officer may lawfully conduct a temporary detention if there is reasonable suspicion to believe that the detained person is violating the law. *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008). An officer has reasonable suspicion if the officer "has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). "These facts must amount to more than a mere hunch or suspicion." *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). "The articulable facts used by the officer must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime." *Id*.

The standard for determining whether reasonable suspicion exists is an objective one. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). There only needs to be an objective basis for the detention; the subjective intent of the officer conducting the detention is irrelevant. *Id*. In making a reasonable suspicion determination, we consider the totality of the circumstances. *Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005). We review de novo the legal question of whether the totality of the circumstances is sufficient to support an officer's

5

reasonable suspicion. *Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007).

**C. Analysis**

Appellant contends that Heizer unlawfully detained him because Heizer had no articulable facts which could have led him to reasonably conclude that appellant had violated the law. He argues that once he produced identification to Heizer showing that he was not Branton, Heizer's continued detention of him was unlawful. Appellant further asserts that Heizer's subsequent discovery of his warrant and his attempt to flee do not change the unlawfulness of the initial detention.

The State contends that a rational jury could have concluded that Heizer lawfully detained appellant. In support of its contention, the State argues that "because Appellant told Marshall Heizer that he was driving without a license and could only produce another type of ID when Marshall Heizer requested identification, Heizer had the reasonable suspicion necessary to detain Appellant for driving without a license." The State cites Texas Transportation Code section 521.025, which provides, in relevant part, that "[a] peace officer may stop and detain a person operating a motor vehicle to determine if the person has a driver's license as required by this section." TEX. TRANSP. CODE § 521.025(b).

However, on direct examination, Heizer testified:

Q: All right. So [appellant] gave you his ID that identified who he was, and what did you do at that point?

6

A: I was still dealing with the driver who was wanting to just – he claimed to back up in the street to park his truck. I told him, "You can't drive. You don't have a driver's license on you, so I need you to write down your name, date of birth," had him turn off his vehicle.

It is clear from this testimony that Heizer was referring to Acorn, the driver of the tan truck, whom Heizer testified had tried to leave and who told Heizer that he did not have an ID, and not appellant.

Appellant also contends that Heizer had no reason to detain him for driving without a license because Heizer never demanded to see a driver's license. Heizer testified:

Q: So if you asked everybody there if they were Danny Branton, if they knew who Danny Branton was and nobody said anything, what did you do next?

A: I told everybody that I needed to see their identifications.

Q: And generally what do people give you when you ask for identification?

A: Driver's license, ID card, whatever they have, passport maybe.

Q: And what did everybody say?

A: They – well, the guy in the truck tried to leave and said he didn't have an ID. The gentleman in the right front passenger seat got out, grabbed his wallet, acted like he was going to show me an ID, and then Mr. Day and Mr. Cole handed me their IDs.

Q: That ID that you got from Mr. Day, was that a driver's license?

A: No.

7

Q: But it was some other kind of ID?

A: Yes.

The State argues that "[o]nce Heizer saw Appellant driving and he did not produce a driver's license, Heizer had the reasonable suspicion necessary—articulable facts that combined with rational inferences—that Appellant was driving without a license." Heizer testified that (1) appellant was driving, (2) Heizer asked the individuals for identification, and (3) appellant produced a photo ID that was not a driver's license. Had Heizer asked appellant for his driver's license and appellant not produced his driver's license, Heizer would have had reasonable suspicion that appellant was driving without a license. *See* TEX. TRANSP. CODE § 521.025 (mandating that individuals driving in Texas have in their possession current driver's licenses and display them when asked to by police officer and stating that failure to comply is criminal offense). Here, however, the evidence shows only that Heizer asked to see appellant's identification and that appellant complied with his request. Furthermore, when Heizer was asked what people generally give him when he asks for identification, he replied, "Driver's license, ID card, whatever they have, passport maybe." This testimony further undermines the assertion that Heizer had articulable facts that led him to reasonably conclude that appellant was violating the law. *Kerwick*, 393 S.W.3d at 273.

The State also contends that Heizer's detention of appellant was lawful to determine whether appellant (1) was Branton and (2) had a warrant for his arrest. The State is correct that Heizer's detention of appellant to determine whether he was Branton was lawful. However, it is the continued detention *after* Heizer determined that appellant was not Branton about which appellant complains. Heizer testified that he knew appellant was not Branton once he saw appellant's identification. The State contends that Heizer's detention of appellant was lawful to determine whether appellant had a warrant for his arrest but a detention may not be prolonged solely in hopes of finding evidence of some other crime. *See Kothe v. State*, 152 S.W.3d 54, 64 (Tex. Crim. App. 2004) (concluding proposition that warrant check cannot be used solely as means to extend detention once reasonable suspicion forming basis for stop has been dispelled is consistent with rationale behind Supreme Court's development of Fourth Amendment law); *Davis*, 947 S.W.2d at 245 (holding purpose of stop for suspicion of DWI effectuated and detention should have ended when officer determined driver was merely tired). Once Heizer determined that appellant was not Branton, there was no basis to suspect that he was involved in criminal activity and his detention should have ended.

Based on the totality of the circumstances, we conclude that there is insufficient evidence of specific, articulable facts showing reasonable suspicion for Heizer's detention of appellant. *See Davis*, 947 S.W.2d at 241. Therefore, there is

9

no evidence from which a rational jury could determine that appellant's detention was lawful. *Adames*, 353 S.W.3d at 859. Accordingly, we sustain appellant's first point of error.[2]

**Conclusion**

Because the evidence is insufficient to support appellant's conviction for evading arrest or detention, we reverse the trial court's judgment and render a judgment of acquittal.

Russell Lloyd
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[2] Because appellant's first point of error affords him the greatest relief and is dispositive of the appeal, we need not address his remaining points of error concerning whether (1) the pretrial identification process involving a punishment witness tainted his in-court identification of appellant and (2) the trial court erred in overruling his objection to the testimony of an expert witness who was not on the State's witness list. *See* TEX. R. APP. P. 43.3, 47.1.