# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00021-CR

**Donald Weston King, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY
### NO. 101401, HONORABLE ROBERT UPDEGROVE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Donald Weston King was arrested for driving while intoxicated. After the trial court denied his motion to suppress evidence, King pleaded nolo contendere, and the trial court sentenced him in accordance with a plea agreement. On appeal, King challenges the denial of his motion to suppress. For the reasons that follow, we affirm.

### BACKGROUND

King was charged by information with the offense of driving while intoxicated on October 7, 2011, enhanced with one prior driving while intoxicated conviction. In the trial court, King moved to suppress evidence from the traffic stop that resulted in his detention and arrest.

The suppression hearing was held on January 29, 2013. The arresting officer who had been with the San Marcos Police Department for 15 years was the only witness to testify. He testified that he was working the midnight shift when he observed the vehicle King was driving

"failing to maintain a single lane" and make "an illegal U-turn." The vehicle "was traveling southbound on Hunter Road towards Wonder World" in San Marcos, Texas. After the officer observed the vehicle "failing to maintain a single lane," the driver of the vehicle "made a right onto Wonder World and immediately did a U-turn on Wonder World back onto Hunter to continue driving southbound on Hunter." The officer further explained the vehicle's movement through the intersection as follows:

> As soon as he made a right onto Wonder World—I guess I'll have it up to you so you can see—he made the right right there, and I believe it's a two-lane outbound and two-lane inbound, so four way—or a four lane road. He was on the right-hand side, and I guess he figured out he was going the wrong way. I don't know. He just immediately swung around to the left back into the—into the right-hand lanes and then immediately went to the right onto Hunter as well.

The officer referred to a map that he had hand drawn the morning of the hearing that depicted the intersection and King's movements through the intersection. The map was admitted as an exhibit. The officer initiated the traffic stop after the vehicle cleared the intersection. The officer explained: "I slowed behind him not knowing—thinking he was going to go straight on Wonder World, and when he immediately hit his brakes to turn left, I just kind of hung back and waited to see what he was going to do, and he continued straight on Hunter."

At the conclusion of the hearing, the State requested that the trial court take judicial notice that Wonder World was four lanes with a divided double-yellow line. After the hearing, the trial court denied the motion to suppress but did not rule on the State's request for judicial notice. No findings of fact or conclusions of law were requested or made. After the motion to suppress was

denied, King pleaded nolo contendere, and the trial court sentenced him in accordance with a plea agreement. This appeal, limited to the denial of the motion to suppress, followed.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is reviewed under an abuse of discretion standard. *Crain v. State*, 315 S.W.3d 43, 38 (Tex. Crim. App. 2010); *see also Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009) (stating that trial court abuses its discretion when its decision lies outside zone of reasonable disagreement). In a suppression hearing, the trial court is "the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Wilson v. State*, 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Under that standard, we defer to the trial court's determination of historical facts "if supported by the record," *Wade v. State*, 422 S.W.3d 661, 666 (Tex. Crim. App. 2013), but we review de novo the trial court's application of the law to those facts, *Wilson*, 311 S.W.3d at 458. Similarly, appellate courts "afford almost total deference" to rulings on mixed questions of law and fact when the resolution of those questions depends on the evaluation of credibility and demeanor but review de novo mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. *State v. Johnson*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011). Further, we review de novo purely legal questions. *Id.*

3

King did not request findings of fact and conclusions of law. Thus, we must "view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007) (citing *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (citing *Carmouche*, 10 S.W.3d at 328)).

**DISCUSSION**

In one issue, King contends that the trial court erred in finding that there was reasonable suspicion for the officer to initiate the traffic stop.[1] He urges that the trial court erred in finding that King committed a traffic violation under section 545.051(c) of the Transportation Code. *See* Tex. Transp. Code § 545.051(c). According to King, section 545.102 is the section of the Transportation Code that specifically addresses u-turns and, under that section, the u-turn that King made was not a traffic violation. *See id*. § 545.102.

An officer may initiate a traffic stop when he reasonably suspects that the driver is violating the law. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *see also* U.S. Const. amend. IV; *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "Reasonable suspicion exists if the

---

[1] As an initial matter, King urges that, to the extent the trial court took judicial notice that the road in question was a four-lane road with a divided double-yellow line, it erred. *See* Tex. R. Evid. 201 (allowing judicial notice of adjudicative facts). King contends that judicial notice was improper because the condition and makeup of the road over a year prior to the hearing was not commonly known and was contested, and the trial court did not notify King that it was taking judicial notice. *See id*. R. 201(e) (entitling party to opportunity to be heard as to propriety of taking judicial notice). The record, however, does not reflect that the trial court took judicial notice of any facts. Although the State asked the trial court to take judicial notice that the road was four lanes with a divided double-yellow line, the trial court did not rule on the request.

officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity." *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008) (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). "The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent." *State v. Kerwick*, 393 S.W.3d 270, 274 (Tex. Crim. App. 2013) (citing *Terry*, 392 U.S. at 21–22 and *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011)). The standard is "what a reasonable officer would have done with what he actually did see." *See State v. Duran*, 396 S.W.3d 563, 572 (Tex. Crim. App. 2013). In making the determination of whether reasonable suspicion existed, we consider the totality of the circumstances. *Ford*, 158 S.W.3d at 492; *Garcia*, 43 S.W.3d at 530.

Because the only evidence presented at the hearing was the testimony of the arresting officer and his hand-drawn map of the intersection, the trial court was presented with a mixed question of law and fact wherein the resolution turned on an evaluation of the credibility and demeanor of the arresting officer. *See Ross*, 32 S.W.3d at 856. Therefore, we give almost total deference to the trial court's ruling that reasonable suspicion existed. *See id.*; *see also Johnson*, 336 S.W.3d at 657.

To support his position that the trial court erred by denying his motion to suppress, King focuses on the officer's testimony that he "believe[d]" the road was four lanes. King contends that the officer's belief that the road was four lanes conflicted with the officer's hand-drawn map, and the officer's belief over a year after an incident is insufficient to establish the existence of

5

reasonable suspicion to initiate a traffic stop or to support a finding of a traffic violation under section 545.051(c) of the Transportation Code. *See* Tex. Transp. Code § 545.051(c). King urges that the officer's hand-drawn map contradicted the officer's testimony that the road was four lanes because the map depicts the road as two lanes.

Viewing the evidence in the light most favorable to the trial court's ruling, however, the trial court could have found that the hand-drawn map showed directions of travel, not number of lanes, and that the map, therefore, was not inconsistent with the officer's testimony. *See Wiede*, 214 S.W.3d at 25. Further, we must assume that the trial court found the officer's testimony credible. *See St. George*, 237 S.W.3d at 725 (noting that trial court is "the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony"); *Wiede*, 214 S.W.3d at 25 (noting that appellate court must view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record).

King also focuses on the particular provision of the Transportation Code alleged to have been violated. He urges that the more specific section 545.102 of the Transportation Code, addressing "Turning on Curve or Crest of Grade," controls over section 545.051(c). *See* Tex. Transp. Code §§ 545.051(c), .102. For purposes of this appeal, section 545.102 prohibits u-turns in specified situations, *id.* § 545.102, and section 545.051(c) provides that "[a]n operator on a roadway having four or more lanes for moving vehicles and providing for two-way movement of vehicles may not drive left of the center line of the roadway." *See id*. § 545.051(c).

6

The State did not argue to the trial court and does not assert on appeal that King violated section 545.102, but that the trial court could have denied the motion to suppress based on a finding that either: (i) King violated section 545.051 by not staying to the right of the roadway, or (ii) the officer had reasonable suspicion to stop the vehicle under a totality of the circumstances even absent a traffic violation. *See Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014) (noting that it is "not necessary that the reasonable suspicion relate to a specific criminal offense"); *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013) (explaining that "State does not have to establish with absolute certainty that a crime occurred; it just has to carry its burden of proving that, under the totality of the circumstances, the seizure was reasonable"); *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011) (noting that it is "not a *sine qua non* of reasonable suspicion that a detaining officer be able to pinpoint a particular penal infraction"); *Curtis v. State*, 238 S.W.3d 376, 379–80 (Tex. Crim. App. 2007) (finding that court of appeals failed to consider "rational inference" from "car weaving in and out of his lane several times, over short distance, late at night" in its determination of whether there was justification for detention); *Arroyo v. State*, No. 01-10-00136-CR, 2011 Tex. App. LEXIS 679, at *10–12 (Tex. App.—Houston [1st Dist.] Jan. 27, 2011, no pet.) (mem. op., not designated for publication) (collecting cases in which courts considered, among other facts, time of day and weaving in determination of whether there was reasonable suspicion of driving while intoxicated based on totality of circumstances).

Here, in addition to the officer's testimony about the vehicle's movement through the intersection, the officer also observed the vehicle "failing to maintain a single lane" before it reached the intersection, the traffic stop occurred after midnight, and the officer had 15 years of

experience. Viewing this evidence in the light most favorable to the trial court's ruling and assuming that the trial court made implicit findings of fact based on rational inferences from this evidence, we agree with the State that the record supports a finding of reasonable suspicion. *See Guerra*, 432 S.W.3d at 911; *Neal*, 256 S.W.3d at 280. Thus, considering the totality of the circumstances, we cannot conclude that the trial court erred when it denied the motion to suppress. *See Ford*, 158 S.W.3d at 492; *Garcia*, 43 S.W.3d at 530.

## CONCLUSION

For this reason, we overrule King's issue and affirm.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin
    Dissenting Opinion by Chief Justice Jones

Affirmed

Filed:  November 14, 2014

Do Not Publish