ACCEPTED
13-16-00092-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
5/11/2016 12:24:58 PM
Dorian E. Ramirez
CLERK

# CAUSE NO. 13-16-00092-CR

## IN THE COURT OF APPEALS
## FOR THE THIRTEENTH JUDICIAL DISTRICT OF TEXAS
## CORPUS CHRISTI, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
5/11/2016 12:24:58 PM
DORIAN E. RAMIREZ
Clerk

**CYNTHIA GONZALEZ**
**Appellant**

**V.**

**THE STATE OF TEXAS**
**Appellee**

## APPEAL FROM THE COUNTY COURT AT LAW NUMBER TWO (2) NUECES COUNTY, TEXAS, IN TRIAL CAUSE NO. 14-CR-7016-2

## APPELLANT'S BRIEF

**TRAVIS BERRY**

**State Bar No. 24059194**
**P.O. Box 6333**
**Corpus Christi, Texas 78466**
**Telephone: (361) 673-5611**
**Facsimile: (361) 442-2562**
**travisberrylaw@gmail.com**

**ATTORNEY FOR APPELLANT**

**ORAL ARGUMENT IS REQUESTED**

## IDENTITY OF INTERESTED PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.1(a), Appellant lists the

following persons who have an interest in the appeal:

**JUDGE:**    Hon. Lisa Gonzalez
Nueces County Court at Law No. 2
901 Leopard
Corpus Christi, Texas 78401

| PARTIES: | COUNSEL FOR APPELLANT: |
|---|---|
| Cynthia Gonzalez- Appellant | Travis Berry<br>Texas Bar No. 2405194<br>P.O. Box 6333<br>Corpus Christi, Texas 78466<br>Telephone:  (361) 673-5611 |
| The State of Texas - Appellee | **COUNSEL FOR THE STATE:** |
| Mark Skurka<br>Nueces County District Attorney<br>Texas Bar No.  18475570<br>901 Leopard - Rm. 206<br>Corpus Christi, Texas 78401<br>Telephone:  (361) 888-0410 | Jeneba Barrie<br>Assistant District Attorney<br>Texas Bar No. 24093475 |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii.

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv.

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

The trial court erred when it found that the traffic stop of this vehicle met the test of reasonableness required by the Fourth Amendment of the United States Constitution and Article I, Section 9, of the Texas Constitution.

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    Officer's testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
         1.    Officer Rodriguez . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
         2.    Officer Rogers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    B.    Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    C.    Court's ruling and defense objection . . . . . . . . . . . . . . . . . . . . 14

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# INDEX OF AUTHORITIES

**CASES**                                                                    **PAGE**

Bynes v. State, 07-08-0207-CR, 2009 WL 1107987, (Tex.App.-Amarillo April 24, 2009, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Ford v. State, 158 S.W.3d 488 (Tex. Crim. App. 2005) . . . . . . . . . . . . . . . . . . . . 20

Garcia v. State, 43 S.W.3d 527 (Tex. Crim. App. 2001) . . . . . . . . . . . . . . . . . 18

Gonzales v. State, 369 S.W.3d 851 (Tex. Crim. App. 2012) . . . . . . . . . . . . . . 16

Neal v. State, 256 S.W.3d 264 (Tex. Crim. App. 2008) . . . . . . . . . . . . . . . . . . . 16

State v. Ross, 32 S.W.3d 853 (Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . . . 16

State v. Garcia-Cantu, 253 S.W.3d 236 (Tex. Crim. App. 2008) . . . . . . . . . . . . 17

State v. Kelley, 204 S.W.3d 808 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . . 17

Turrubiate v. State, 399 S.W.3d 147 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . 16

Wade v. State, 422 S.W.3d 661 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . 19

Whren v. United States, 517 U.S. 806 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Wiede v. State, 214 S.W.3d 17 (Tex. Crim. App. 2008) . . . . . . . . . . . . . . . 16, 17

Wright v. State, 7 S.W.3d 148 (Tex. Crim. App. 1999) . . . . . . . . . . . . . . . . . . . 19

**STATUTES**                                                                    **PAGE**

Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18

Texas Constitution - Article I, Section 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18

Texas Transportation Code §552.006(c) . . . . . . . . . . . . . . . . . . . . 10, 14, 15, 21, 22

**TO THIS HONORABLE COURT OF APPEALS:**

**STATEMENT OF THE CASE**

Cynthia Gonzalez was accused by information on October 28, 2014, of two counts of failure to identify under Texas Penal Code §38.02, a class B misdemeanor. (CR7)

On March 13, 2015, Ms. Gonzalez filed her written motion to suppress. (CR29) On September 23, 2015, Ms. Gonzalez's motion was heard by the trial court and it was denied. (CR32; RR52) On February 8, 2016, Ms. Gonzalez pled guilty while retaining her right to appeal the denial of the motion and was sentenced by the trial court to serve one day of jail in the Nueces County Jail. (CR45; CR48)

On February 10, 2016, Ms. Gonzalez filed her timely notice of appeal. (CR49)

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would assist in determining the reasonableness of the officer's traffic stop in light of the evidence presented.

## ISSUE PRESENTED

The trial court erred when it found that the traffic stop of this vehicle met the test of reasonableness required by the Fourth Amendment of the United States Constitution and Article I, Section 9, of the Texas Constitution.

## STATEMENT OF FACTS

On the evening of September 6, 2014, Appellant was riding as a passenger in the vehicle of Roy Tavarez around 10:20 p.m.. (CR14) Mr. Tavarez's vehicle exited a Whataburger restaurant in Corpus Christi, Texas, located at 1521 Airline Road near the intersection of Airline Road and Texas Highway 358 - South Padre Island Drive. After exiting the Whataburger onto Airline Road, Mr. Tavarez was pulled over by Corpus Christi Police Officers Michael Rogers and Crystal Rodriguez.

### A.    Officer's testimony

### 1.    Officer Rodriguez

Officer Rodriguez's probable cause statement on the reason for the traffic stop was, "There was an elderly man with a walker near the vehicle waiting to cross the sidewalk but could not due to the vehicle being in the way." (CR14) After the stop was made, Ms. Rodriguez did not provide her true name to the officers and she was arrested for failure to identify. On September 23, 2015, Ms. Gonzalez's motion to suppress an illegal traffic stop was heard by the trial court. (CR29; RR)

The State made an opening remark that "there was probable cause for the stop." (RR4) The State called Officer Rodriguez who testifed that

4

Officer: "We were patrolling down Airline when we saw an elderly man with a walker trying to cross. Well, trying to walk on the sidewalk. But he couldn't because there was a vehicle blocking the sidewalk at the Whataburger parking lot.

State: And you said a vehicle blocking the parking lot. Was that when you decided to approach the vehicle?

Officer: No. We waited till the vehicle pulled out. Waited till it went down the street a little bit so we could get in a little bit of a safer area to pull it over.

State: Okay. And the vehicle blocking the sidewalk is that a traffic violation?

Officer: Yes, it is. Well, not so much on the street, but it is like a parking violation. It is a violation, yes. (RR7)

On cross-examination, Officer Rodriguez testified that the driver, Roy Tavarez, was not cited for a traffic violation. On the issue of whether there was a traffic violation, the officer stated that, "I know blocking a sidewalk is a violation." (RR12)

Officer Rodriguez agreed that when she parks her vehicle, she shifts the vehicle into "Park" and turns the vehicle off. The officer also agreed that Mr. Tavarez was in the process of "exiting the Whataburger parking lot with the intent to enter onto Airline [Road]"; he was not in the process of parking his vehicle, but that he was "stopped over the sidewalk" during his exit from Whataburger. (RR13)

5

Officer Rodriguez then testified that vehicles which leave businesses on this street must cross over the sidewalk to get onto Airline Road and that this vehicle was stopped "because it was stopped over the sidewalk." The officer continued to state that "if you're gonna stop, you have to stop before the sidewalk line... they [pedestrians] couldn't go because there was vehicles coming. So that's why they had to stop and wait for however long they waited for vehicles to go by until they had their chance to go onto Airline." (RR14-15)

Officer Rodriguez agreed that this area, Airline Road intersecting South Padre Island Drive, is a busy intersection and that "the driver was being cautious by stopping before entering Airline Road. (RR15) The officer further agreed that "it [would] be more prudent to stop before entering Airline to see if there's heavy traffic or not" and "that it would be more safe than to just barrel out without making a stop." (RR15-16)

On re-direct, Officer Rodriguez testified that she soulnd't remember how long this vehicle was waiting to exit the Whataburger but that "the elderly man that was trying to get across stand there for a few seconds at least. But there was traffic going through, so he couldn't get through." (RR17)

On re-cross, Officer Rodriguez could not remember "whether or not he [pedestrian] was coming from Williams [Road] or towards Williams [Road]", but

6

she did remember that the vehicle turned towards Williams Road before it was pulled over. Upon identifying which direction the vehicle turned, Officer Rodriguez agreed that this meant the driver must have looked "to the left" before making his turn to the right. The officer also admitted that she did not know whether this driver at 10:22 pm ever saw the man walking on the sidewalk.(RR18)

## 2. Officer Rogers

The State's final witness was Officer Rogers who also testified that a man was walking down the sidewalk and he observed a vehicle "parked or stopped on the sidewalk." (RR23) On cross-examination, Officer Rogers stated that the vehicle was stopped for "blocking the sidewalk". (RR25)

The officer agreed that this was not an intersection with painted crosswalk likes, rather it was an entrance to a business with no such delineation. He too could not remember which way the pedestrian was walking but remembered that this vehicle was exiting a business and that you cannot exit this business without crossing over the sidewalk. (RR27)

The officer agreed that under Texas law, vehicles have a duty to stop for pedestrians who are in a crosswalk. (RR27) He also agreed that there are no painted crosswalk lines at business exits and he did not know whether this driver, at this time of night, even saw this pedestrian. (RR28) But, had he issued a traffic

7

citation to Roy Tavarez, it would have been for "not stopping before you cross the sidewalk."

Officer Rogers agreed when asked that "So pretty much all along any major street like Airline, Staples, Everhart, people have to exit those businesses over the sidewalk, correct?" He also agreed that, "people driving over the sidewalk to get onto the major thoroughfare is normal", that this was a busy intersection next to South Padre Island Drive, there is a great deal of traffic exiting the highway onto Airline Road, and that it would be "prudent [to stop] before pulling out in front of [a] car." (RR30-31)

Officer Rogers then agreed that "it would be the smart move to not just pull into Airline, but rather to stop your vehicle before entering Airline?", and that is was a possibility that this is what occurred before Mr. Tavarez was pulled over. (RR31)

The trial court engaged Officer Rogers and asked

Court:    And so if you exit, you're going to have to cross over the sidewalk.?

Officer:    Yes.

Court:    Okay. And so, was the vehicle ever stopped here where it was parked or was it moving to get onto Airline traffic?

Officer:    No, it was stopped.

8

Court:       Was it stopped -- like was it stopped in gear or was it
             completely parked?

Officer:     No, it wasn't parked. It was --

Court:       Okay. The ignition wasn't off. It wasn't blocking the sidewalk
             because it was off?

Officer:     Correct.

Court:       Okay. And so, did you see it when it came from where ever it
             was in the Whataburger – – [1]

Court:       And I guess what my last inquiry was when you saw the
             vehicle exiting the Whataburger, did you see it come like from
             way back here, all the way up, and pull into where it was
             blocking the sidewalk or did you just make contact or see it
             when it was already in this walking area?

Officer:     When we came in the view of the car it was already stopped
             there.

Court:       So can you say, or do you know, did you see whether or not it
             stopped before it entered the sidewalk?

Officer:     I can't say. I don't know.

Court:       Okay. You don't know. So basically when you saw it, the first
             time you saw it was right here already in the sidewalk.

Officer:     I believe so.

Court:       Okay. As I understand it though, your understanding of the
             violation is that if you fail to stop before you enter it, correct?

---

[1] The trial court took a recess after this question and resumed with the next question listed

Officer: Correct.

Court: Whoever would have had to stop here and then cross?

Officer: I get what you're saying. (RR34-35)

The prosecutor then read Transportation Code §552.006(c) into the record:

The operator of a vehicle emerging from or entering an alley, building, or private road or driveway shall yield the right-of-way to a pedestrian approaching on a sidewalk extending across the alley, building entrance or exit, road, or driveway. (RR35)

The trial court commented "Y'all may need to look at some case law because I'm not really clear from the testimony. It doesn't appear that the gentleman was in the way already. So I'll let y'all follow-up. That's where my concern is and I'll let you follow-up with these witnesses on that issue." (RR36)

Officer Rogers testified that the vehicle did not yield the right-of-way to the pedestrian. (RR36, 38) On re-cross Rogers agreed that any patron of the Whataburger would have to cross this sidewalk to exit the parking lot and that "it is prudent to avoid an accident by stopping your vehicle before the accident occurs." Officer Rogers agreed that he did not know if the vehicle had stopped on the sidewalk to avoid an accident with oncoming traffic. (RR39) Rogers also agreed that, at this time of night (10:22 p.m.) a driver would need to have first

10

seen a pedestrian to know they were approaching so that they could yield. (RR40)

The trial count engaged Officer Rogers asking,

Court:      When you saw the vehicle blocking the sidewalk here, where was the pedestrian?

Officer:    the pedestrian was stopped next to the car.

Court:      I'm just trying to figure out when the person entered the sidewalk, where the pedestrian was. Whether they should have yielded or whether the person was so far off that there was no reason to yield. Do you know?

Officer:    I don't know. But the pedestrian doesn't move very fast. I mean, in his condition. [using a walker]   (RR41, 42)

## B.    Arguments

The State opened that "if a motorist is emerging from a driveway or business, which Whataburger is, they have to stop before and give a right-of-way to the pedestrian. And in this case, that was not done by the driver." The State argued that Ms. Gonzalez "could have been written up for blocking a sidewalk, or failing to stop, or to yield to a passenger on a sidewalk. And therefore, the officers did have at least reasonable suspicion to pull the car over and to make that stop because they violated that traffic code." (RR43)

The State then made a statement not supported by the evidence when it told the trial court, "And as both officers testified, the pedestrian was on his walker

11

attempting to navigate around the vehicle." (RR43, lines 14-16) Neither officer testified that way, the officer's only testified that the pedestrian had reached the car, they never testified the pedestrian attempted to walk around the vehicle.

The defense noted that the officers could not recall the location or direction this pedestrian was walking in relation to the Whataburger exit and questioned whether their observations created a reasonable suspicion for a traffic stop. (RR44) The defense also pointed out that the officers failed to establish whether the driver ever saw this pedestrian before attempting to exit the parking lot. (RR45, 47)

The defense then argued that the State's position, as it relates to the enforcement of this traffic code, was unreasonable,

> "where's the bright line rule of what we're supposed to do? If I look down and I see someone coming 30 feet away, well, I guess I should just wait. I mean, if it takes ten minutes for that person to walk through then I think the State's view of the code is that's what you should do. You should have to just wait as long as it takes that person to go through." (RR 47, 48)

The defense then posed the question of whether or not this driver was on notice, whether he saw this pedestrian at 10:30 p.m. before attempting to exit the parking lot. The defense showed that the officers had not established that this driver was on notice that a passenger was attempting to cross the parking lot exit.

12

Both officers agreed that "it's a very prudent move to avoid an accident." (RR48)

The defense described this driving situation (leaving a parking lot onto a busy thoroughfare) as a "flowing situation" and "that during the exiting of the vehicle from the Whataburger, at some point he stops.....we don't know why he stopped....now you're in this limbo zone where now you're in violation of the law." (RR49)

The defense argued that this driver acted reasonably here,

I think in this situation, I think it's unreasonable to hold this driver accountable for some type of traffic code violation when he possibly could have been avoiding an accident....I think it's much more prudent to have possibly stopped. And if you do that, then you've violated this code. I don't see anyone that's going to say, well, I might as well get hit, you know. I don't want to violate the law. And so no, you're not going to do that. You're going to stop.... It's [other vehicles] coming off SPID and they're traveling at a rate of speed that's unsafe for you to pull back out so you stop. At that point, you're now in the safe view, [and] in violation of the Transportation Code."

The defense argued that it was unreasonable for these officers to make this traffic stop when they testified that stopping before entering a busy street to avoid an accident was prudent, that "they did not know how close the pedestrian was to the intersection" and "what has happened here in light of the possibility of another car coming through or whatever, I think it's unreasonable to have effectuated this traffic stop." (RR51) The defense argued, "this was not a reasonable stop because

13

the officers gave good reason to the Court why someone should stop in that position to avoid a wreck with the traffic coming off of SPID right there." (RR52)

The defense finally argued that every motorist on the road has done what this driver did,

> "You think you're safe and then a big truck or whoever it is, is hauling fast and you say, whoa! I can't pull out because I'm going to get hit and you stop. Well, in that moment of safety you've placed yourself in this limbo of, well, now you can be ticketed. I just don't think it's reasonable and I think that the lack of any type of citation supports the unreasonableness of the police action here."   (RR52)

## C.     Court's ruling and defense objection

In denying the motion to suppress, the trial court relied on §552.006(c) and found that, "Based on the section that the officer -- that they were able to look up, for purposes of this motion to suppress, your motion is denied." (RR52) The defense lodged an objection to the trial court's ruling to which the trial court overruled. (RR53) This appeal follows.

14

## SUMMARY OF THE ARGUMENT

The State's citation to §552.006(c) of the Transportation Code was accurate. Although the code is valid and enforceable, the enforcement is subjective upon an officer's observations. Enforcement of this code in this case was unreasonable: (1) in light of the officer's testimony about the prudence of why this driver may have stopped before exiting the parking lot, (2) that the officers did not know if the driver ever saw this pedestrian because they could not determine where the pedestrian was traveling in relation to the area at issue, and (3) because the evidence showed that the vehicle was not operated unsafely nor was the pedestrian ever in danger.

## STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). "We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of law to the facts *de novo*." *Id*. We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and we review *de novo* the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012); *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008).

At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2008); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (en banc). "This is so because it is the trial court that observes firsthand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record." *Ross*, 32 S.W.3d at 855; *see Wiede*, 214 S.W.3d at 24.

When a trial court makes no explicit fact findings, as here, we infer the necessary fact findings that would support the ruling if the record evidence

16

(viewed in the light most favorable to the trial court's ruling) supports the implied fact findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *Wiede* at 25. We review the trial court's legal rulings *de novo* unless its supported-by-the-record explicit fact findings are dispositive of the legal ruling. *State v. Kelley*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

**ARGUMENT**

**ISSUE:**   **The trial court erred when it found that the traffic stop of this vehicle met the test of reasonableness required by the Fourth Amendment of the United States Constitution and Article I, Section 9, of the Texas Constitution.**

It has long been true that a traffic violation can constitute a reasonable basis for a detention. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). Indeed, reasonable suspicion that such a violation occurred permits an officer to stop the suspect. *Bynes v. State*, 07-08-0207-CR, 2009 WL 1107987, at *2 (Tex.App.-Amarillo April 24, 2009, no pet.) (mem. op., not designated for publication); see *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App.2001) (holding that reasonable suspicion does not require absolute certainty that an offense was committed). And, because the presence of reasonable suspicion is an objective standard, the subjective intent of the police officer undertaking the stop is irrelevant. *Garcia* at 530. In other words, the subjective reasons uttered by the officer to legitimize the stop have no bearing on the outcome if the totality of the circumstances nonetheless would lead a police officer to reasonably suspect that crime is afoot. *Id*. at 530;

Ms. Gonzalez argues that the trial court should have granted the motion to

suppress because the stop was neither reasonable nor justified under the totality circumstances. The evidence never showed that this vehicle was being operated in an unsafe manner nor did the pedestrian seem to be in harms way. As such, the State could not invoke the community caretaking function to support the officer's stop during the hearing.[2] Irrespective of whether the community caretaking function was considered by the trial court, we will "uphold the trial judge's ruling if it is reasonably grounded in the record and correct on any theory of law applicable to the case." *Wade v. State*, 422 S.W.3d 661, 667 (Tex.Crim.App. 2013)

The officers testified that this pedestrian could not pass on the sidewalk due to the vehicle blocking the path. The officers never showed that the driver was on notice of this pedestrian. As they could not recall which direction the pedestrian was traveling, it could not be shown that the passenger was present on the side of the vehicle in which the driver was looking before turning. A lack of a yeild could have reasonably come from the driver's lack of knowledge. Without further articulation as to the driver's knowledge of this pedestrian from the driver's viewpoint, it is respectfully submitted that this testimony regarding the driver blocking the sidewalk could be construed as being a conclusory statement, which

---

[2] "As a part of his duty to 'serve and protect,' a police officer may stop and assist an individual whom a reasonable person—given the totality of the circumstances—would believe is in need of help." *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999).

cannot justify a stop. See, e.g., *Ford v. State*, 158 S.W. 3d 488 (Tex. Crim. App. 2005) (officer's testimony that Defendant was "following too close" to another vehicle is not specific enough and thus conclusory).

As to the officer's testimony, the State's final argument was misleading. The State argued that, "And as both officers testified, the pedestrian was on his walker attempting to navigate around the vehicle." (RR43, lines 14-16) Neither officer testified that the pedestrian attempted to walk around the vehicle This embellishment is important to note as it makes the situation seem as if this vehicle were stopped for an excessive amount of time without disregard of its surroundings; this could have led the trial court to discount a notion that this driver maybe did not see this pedestrian, a reasonable notion as admitted by the officers. If the trial court's ruling was made in any part upon the State's misstatement of the evidence, then the ruling is tainted and reversible.

As to the traffic stop itself, the length of time this pedestrian's right-of-way was blocked goes to the reasonableness of the stop. The officers did not come in and make the stop when they observed the alleged infraction, rather, "We waited till the vehicle pulled out. Waited till it went down the street a little bit so we could get in a little bit of a safer area to pull it over." (RR7) Had this pedestrian been attempting to actually walk around this vehicle, while using a walker, it

would seem that the officer's would have had a heightened sense of response to this situation.

Even though there was evidence that the vehicle was blocking the sidewalk as it attempted to exit the Whataburger, there was no evidence that it was done in an unsafe manner. The 74th Texas Legislature (Sept. 1, 1995) surely enacted this transportation code for the benefit and safety of pedestrians attempting to cross sidewalks abutted to business exits and other private drive exits. Therefore, without the accompanying risk of danger to this pedestrian, the traffic stop did not comport with the legislative purpose behind §552.006(c).

Rejecting the defense argument as to reasonableness of the stop, the trial court concluded that this vehicle blocking the sidewalk for a short period of time, while attempting to enter a busy roadway, constituted a traffic offense. Ms. Gonzalez argues that, in order for this short period of time the vehicle blocked the sidewalk to have been unlawful, the driver must have known that he was blocking an approaching pedestrian before failing to yield. Without this knowledge, then the need to yield the right-of-way is not present. Further, this blocking never created an unsafe situation. As these two important factors are not present, the enforcement of §552.006(c) in this case was not justified and was unreasonable.

Additionally, when one takes the speed of the traffic coming off of S.P.I.D.

21

onto Airline Road into account of the totality of these circumstances, such temporary impeding of the sidewalk was not done in an unsafe manner and was reasonable under the totality of the circumstances. Both officers testified as such. Therefore, the evidence and the trial court's fact finding was dispositive of the legal ruling that the stop was valid or reasonable under §552.006(c).

## CONCLUSION

The evidence failed to show that this driver ever knew a pedestrian was approaching the Whataburger exit, failed to show that the vehicle was being operated unsafely, and failed to show that this pedestrian was in any sort of danger sought to be protected by enactment of §552.006(c).

## PRAYER

Ms. Gonzalez prays that this Court reverse the trial court's denial of the motion to suppress, enter an order of suppression of evidence gained by the officer's after this traffic stop, and remand the case to the trial court for proceedings consistent with this Court's opinion.

Respectfully submitted,

/s/ *Travis Berry*
Travis Berry
Texas Bar No. 24059194
P.O. Box 6333
Corpus Christi, Texas 78466

22

T: (361) 673-5611; F: (361) 442-2562
travisberrylaw@gmail.com
COUNSEL FOR MS. GONZALEZ

## CERTIFICATE OF SERVICE

This is to certify that on this May 11, 2016, a true and correct copy of the

Appellant's Brief has been sent via e-mail and U.S. Mail to Douglas Norman,

chief appellate attorney for the State, at the Nueces County District Attorney's

Office, 901 Leopard - Rm. 206, Corpus Christi, Texas 78401.

/s/ *Travis Berry*
Travis Berry

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the undersigned certifies this brief complies with the type-volume limitations announced in Rule 9.4(i)(2)(B) of the Texas Rules of Appellate Procedure.

1. The undersigned certifies that the Initial Brief contains no more than **4,251** words in proportionately spaced typeface, an amount of words within the limits set forth in Rule 9.4(i)(2)(B)

2. The brief has been prepared in proportionately spaced typeface using WordPerfect 12 in 14 pt. Times New Roman. Footnotes have been used and are all accounted for in the above word count.

3. The undersigned acknowledges a material misrepresentation in completing this certificate, or circumvention of the type-volume limits states in Rule 9.4(i)(2)(B) of the Texas Rules of Appellate Procedure, may result in the Court striking the brief.

/s/ *Travis Berry*
Travis Berry