

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00017-CV

TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant

V.

ALAN L. RABIDEAU, Appellee

On Appeal from the County Court at Law No. 2
Williamson County, Texas
Trial Court No. 18-1180-CC2

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

After Round Rock police officer Bryce Branzell stopped Alan L. Rabideau for speeding in Williamson County[1] and initially decided that he was going to let Rabideau off with a warning, Branzell reportedly smelled alcohol on Rabideau's breath and noticed Rabideau's eyes were bloodshot. Branzell investigated further and ultimately arrested Rabideau for driving while intoxicated (DWI). Rabideau refused Branzell's request to provide a breath or blood specimen. As a result, the Texas Department of Public Safety (the Department)[2] suspended Rabideau's driver's license. In Rabideau's requested hearing on the suspension, an administrative law judge (ALJ) determined that Rabideau's driver's license was subject to suspension for 180 days.[3] Next, Rabideau appealed to the County Court at Law No. 2 of Williamson County (the CCL), which reversed the ALJ's decision.[4] Now, the Department appeals to this Court, challenging the CCL's reversal of the ALJ's decision and asserting that there was substantial evidence supporting the ALJ's decision. We reverse the CCL's judgment and render judgment reinstating the ALJ's decision, because (1) substantial evidence supported the trial court's finding of reasonable

[1]Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Third Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

[2]*See* TEX. TRANSP. CODE ANN. § 724.035(a).

[3]*See* TEX. TRANSP. CODE ANN. §§ 724.042–.043(a).

[4]The CCL also found that there was no evidence of proper compliance with Section 524.035 of the Texas Transportation Code. However, Section 524.035 applies to an administrative hearing that contests the administrative suspension of a driver's license for failure to pass a test for intoxication when the license holder has submitted to the taking of a breath or blood specimen. *See* TEX. TRANSP. CODE ANN. §§ 524.011(a), 524.012(b), 524.031, 524.035. In this case, Rabideau refused to submit to the taking of a breath or blood specimen, so the administrative hearing was held pursuant to Section 724.042. *See* TEX. TRANSP. CODE ANN. §§ 724.002, 724.042.

suspicion and (2) Rabideau did not preserve a complaint that there was an unreasonable delay in the DWI investigation. Those reasons lead us to the ultimate conclusion that there was no constitutional violation arguable on appeal that prejudiced Rabideau's substantial rights.

At the administrative hearing, admitted without objection were a copy of Branzell's offense report and a statutory warning signed by Rabideau in which he acknowledged that, after his arrest, he refused Branzell's request for a breath and blood specimen. Branzell and Officer Michael Childress also testified.

The evidence showed that, around 10:00 p.m. on December 19, 2017, Branzell observed a motorcycle traveling at a high rate of speed on North Mays Street in Round Rock, and he confirmed with his in-car radar that it was travelling fifty-one miles per hour in a thirty-five-mile-per-hour zone. Branzell began following the vehicle and observed it make an unusual, but not illegal, right turn at a red light at the intersection of East Palm Valley Boulevard. After pulling the vehicle over, Branzell determined that the driver was Rabideau, who provided him with a voided Texas driver's license and a paper Montana driver's license. After providing Rabideau's information to dispatch, Branzell was prepared to give him a warning ticket and release him.

However, when he returned to the motorcycle and told Rabideau that he was giving him a warning, Branzell smelled metabolized alcohol on his breath and noticed that his eyes were bloodshot.[5] Although Rabideau denied consuming any alcohol, he did not explain the smell of alcohol on his breath. He also said that he had taken prescription pain pills and muscle relaxers

---

[5]Branzell testified that, at that point, he did not see any other evidence of the loss of mental or physical faculties. However, Rabideau remained seated on his motorcycle throughout the encounter until he was arrested.

3

for injuries to his back and legs, but would not disclose when he took those medications. Branzell decided to investigate Rabideau for DWI and called for backup, which arrived after several minutes. Branzell did not administer any field sobriety tests until after Officer Childress, who responded to the backup call, arrived on the scene.[6]

Prior to his arrest, Branzell did not see Rabideau stagger, stumble, or fall. However, Rabideau remained seated on his motorcycle until he was arrested. Rabideau's speech was not impaired and was consistent with sobriety. He also appropriately pulled his motorcycle over in response to Branzell's emergency lights.

We review the ALJ's decision under a substantial evidence standard. *See Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999). Under the substantial evidence standard, the ALJ's decision may not be reversed unless the appellant's substantial rights "have been prejudiced because the administrative findings, inferences, conclusions or decisions are:"

(A)     in violation of a constitutional or statutory provision;

(B)     in excess of the agency's statutory authority;

(C)     made through unlawful procedure;

(D)     affected by other error of law;

---

[6]When Branzell asked Rabideau to submit to a horizontal gaze nystagamus (HGN) test, Rabideau claimed to have resting nystagamus. Branzell did not see evidence of resting nystagamus. Branzell performed an HGN test on Rabideau and reportedly found six of six indications of intoxication (lack of smooth pursuit in both eyes, distinct and sustained nystagmus in both eyes, and onset of nystagmus before forty-five degrees in both eyes). Branzell, however, admitted that the test was performed while Rabideau was seated and that the National Highway Traffic Safety Administration rules require that the test be performed while the subject is standing. Branzell requested that Rabideau perform other field sobriety tests and explained them to him. Each time, Rabideau refused, explaining that he was a doctor and that he would not be a good candidate for balancing tests since he had leg, hip, and back injuries. Rabideau repeated on multiple occasions that he could not perform any tests. He also stated that he did not want to incriminate himself by performing any tests and that he thought Branzell was trying to entrap him.

4

(E)      not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F)      arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

TEX. GOV'T CODE ANN. § 2001.174(2). The issue on appeal is whether there is some reasonable basis to support the ALJ's decision, not whether it made the correct decision. *See Mireles*, 9 S.W.3d at 131. We may not substitute our judgment for that of the agency. *Id.* (citing TEX. GOV'T CODE ANN. § 2001.174). We must affirm the ALJ's decision if there is more than a scintilla of evidence to support it, even if the preponderance of the evidence is against it. *Id.* We presume that substantial evidence supports the ALJ's findings, inferences, conclusions, and decisions, and it is Rabideau's burden to prove otherwise. *See Stagg v. Tex. Dep't of Pub. Safety*, 81 S.W.3d 441, 443 (Tex. App.—Austin 2002, no pet.) (citing *City of El Paso v. Pub. Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994)).

If a person is arrested and a peace officer has reasonable grounds to believe the person was operating a motor vehicle in a public place while intoxicated, the officer may request the person to submit to the taking of a breath or blood specimen. TEX. TRANSP. CODE ANN. §§ 724.012(a)(1), 724.015. If the person refuses to submit to the taking of a specimen, the Department is directed to suspend, or deny the issuance of, the person's driver's license. TEX. TRANSP. CODE ANN. § 724.035(a). A person notified of the suspension or denial of his driver's license may request a hearing before an ALJ. TEX. TRANSP. CODE ANN. § 724.041. As applicable to this case, at the hearing, the Department must show that

(1)      reasonable suspicion or probable cause existed to stop or arrest the person;

(2)      probable cause existed to believe that the person was:

  (A) operating a motor vehicle in a public place while intoxicated;

     . . . .

(3)      the person was placed under arrest by the officer and was requested to submit to the taking of a specimen; and

(4)      the person refused to submit to the taking of a specimen on request of the officer.

TEX. TRANSP. CODE ANN. § 724.042.

In its decision, the ALJ found that the Department had proven each of those four elements. On appeal, Rabideau does not challenge the ALJ's findings that there was reasonable suspicion to stop him for speeding, that he was placed under arrest and was requested to submit to the taking of a specimen, or that he refused that request. Neither does he challenge the ALJ's finding that there was probable cause to arrest him for operating his motor vehicle in a public place while intoxicated. Rather, Rabideau contends that his constitutional right to be free from a warrantless search was violated because there was not reasonable suspicion to detain him to investigate whether he was driving while intoxicated, and there was an unreasonable delay in initiating the investigation.

*(1)      Substantial Evidence Supported the Trial Court's Finding of Reasonable Suspicion*

Rabideau first argues that there was not reasonable suspicion to believe he was driving while intoxicated, and therefore his detention was unlawful. "A traffic stop made for the purpose of investigating a traffic violation must be reasonably related to that purpose and may not be

6

prolonged beyond the time to complete the tasks associated with the traffic stop." *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018) (citing *Kothe v. State*, 152 S.W.3d 54, 63–64 (Tex. Crim. App. 2004)). During the stop, the officer may obtain certain information from the driver, may run a computer check on that information, and "is permitted to ask the driver and passengers about matters unrelated to the purpose of the stop, so long as the questioning does not measurably extend the duration of the stop." *Id.* (citing *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). However, whether the official tasks of the traffic stop have ended, the officer may continue the detention if he develops reasonable suspicion that the driver or an occupant of the vehicle is involved in illegal activity. *Id.* at 191 (citing *Johnson*, 555 U.S. at 333).

"Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him [or her] to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). In determining whether there is reasonable suspicion, we use an objective standard that disregards the subjective intent of the officer and looks solely to whether an objective basis for the detention exists. *See id.* at 492; *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). The facts must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to crime. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). We make our determination by considering the totality of the circumstances. *Ford*, 158 S.W.3d at 488–89; *Garcia*, 43 S.W.3d at 530.

7

The facts of this case are similar to those in *Shakespeare v. State*, No. 03-00-00707-CR, 2001 WL 421003 (Tex. App.—Austin Apr. 26, 2001, no pet.) (mem. op., not designated for publication).[7]  In that case, a Department officer observed Shakespeare run a stop sign in downtown Austin at 2:30 a.m.  He did not observe anything else improper about Shakespeare's driving.  When he was stopped, Shakespeare produced his driver's license and proof of insurance without incident.  The officer smelled a moderate odor of alcohol coming from within the vehicle and asked Shakespeare to exit the vehicle and come to the sidewalk.  Shakespeare's speech and gait were normal throughout this time.  While standing on the sidewalk, the officer smelled alcohol on Shakespeare's breath.  *Id.* at *1.

Since Shakespeare conceded the validity of the traffic stop, the sole issue on appeal was whether reasonable suspicion arose during the stop to permit the officer to further detain him and investigate whether he was intoxicated.  *Id.*  Even though his speech and gait were normal, the Austin Court of Appeals held that the combination of the officer observing Shakespeare commit a traffic violation during the early morning hours in downtown Austin and smelling alcohol on his breath rose to the level of reasonable suspicion necessary to temporarily detain Shakespeare to investigate his possible intoxication.  *Id.* at *2.

Similarly, in this case, Branzell observed that Rabideau was travelling at a high rate of speed, and he confirmed with his in-car radar that Rabideau was travelling sixteen miles per hour over the posted speed limit at 10:00 p.m.  Before acting on an intent to release him, Branzell

---

[7]"Although unpublished opinions have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

smelled alcohol on Rabideau's breath and observed his bloodshot eyes.  In addition, although

Rabideau denied that he had consumed alcohol, he did not explain why his breath smelled of

alcohol.[8]  Rabideau also told Branzell that he had taken pain medication and muscle relaxers, but

refused to say when he had taken them.  As in *Shakespeare*, the combination of these facts "and

the inferences that may reasonably be drawn from them support the conclusion that the officer had

reasonable suspicion to briefly detain [Rabideau] to investigate his possible intoxication."  *See id.*

*(2)*　　*Rabideau Did Not Preserve a Complaint that There Was an Unreasonable Delay in the DWI Investigation*

Rabideau also asserts that, even if there was reasonable suspicion to detain him to

investigate whether he was intoxicated, the delay in continuing the investigation until the backup

officer arrived rendered the continued detention unlawful.[9]  However, at the administrative hearing

and in his letter brief to the ALJ, Rabideau argued only that Branzell did not have reasonable

suspicion to detain him.  When a party does not bring his complaint to the ALJ's attention, whether

orally or in writing, the complaint will not be preserved on appeal.  *Pierce v. Tex. Racing Comm'n*,

212 S.W.3d 745, 760 (Tex. App.—Austin 2006, pet. denied) (citing TEX. R. APP. P. 33.1; *Missouri*

*Pac. R.R. Co. v. Whittenburg & Alston*, 424 S.W.2d 427, 430 (Tex. 1968)).  Even a complaint

---

[8]Both of these facts have been noted as indicators of intoxication.  *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (blood shot eyes); *Cotton v. State*, 686 S.W.2d 140, 143 n.3 (Tex. Crim. App. 1985) (blood shot eyes and alcohol on breath).  In addition, excessive speed, which indicates impaired judgment, may be indicative of intoxication.  *See Johnson*, 2009 WL 1563579, at *4; *Kirsch v. State*, 276 S.W.3d 579, 584 (Tex. App.—Houston [1st Dist.] 2008), *aff'd,*. 306 S.W.3d 738.

[9]Although there is no absolute and unbending time limit, the duration of a detention may render it unreasonable. *United States v. Sharpe*, 470 U.S. 675, 679 (1985).  The reasonableness of the duration focuses on whether the officer diligently pursued his investigation by expeditious means during the time it was necessary to detain the defendant.  *Id.* at 686.  Legitimate law enforcement purposes served by the delay may also be considered in determining the reasonableness of the delay.  *Id.* at 685.

based on constitutional grounds may be forfeited on appeal by not raising it in the administrative hearing. *Balkum v. Tex. Dep't of Pub. Safety*, 33 S.W.3d 263, 266 (Tex. App.—El Paso 2000, no pet.) (citing TEX. R. APP. P. 33.1(a)(1); *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990)). Since Rabideau did not assert this complaint at the administrative hearing, he has not preserved it for our review. Consequently, it may not serve as a ground for reversing the ALJ's decision.

Since Branzell had reasonable suspicion to detain Rabideau to investigate whether he was driving while intoxicated, and since Rabideau's other complaint was not preserved for our review, Rabideau's rights were not prejudiced by a constitutional violation preserved for our review. Therefore, we reverse the trial court's judgment and render judgment reinstating the ALJ's decision.

Josh R. Morriss III
Chief Justice

Date Submitted:  June 24, 2019
Date Decided:  July 17, 2019