# NO. 12-21-00055-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *KACIE JANAE CHEEK,*<br>*APPELLANT* | § | *APPEAL FROM THE 349TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant Kacie Janae Cheek was indicted for possession of a controlled substance. After the trial court denied her motion to suppress, Appellant pleaded "guilty" pursuant to a plea bargain agreement. The trial court found the evidence sufficient to find Appellant guilty, but deferred further proceedings, placed Appellant on community supervision for six years, and assessed a fine of $1,000. In her sole issue, Appellant challenges the trial court's denial of her motion to suppress. We affirm the trial court's judgment.

## BACKGROUND

Officer Jody Coates of the Frankston Police Department was in the parking lot of Family Dollar to ensure that people safely arrived at their cars, and the store's employees had also asked him to instruct the driver of a vehicle that had been parked in the store's lot after hours to stop parking there. A vehicle matching the description and license number the employees provided approached the Family Dollar parking lot, and its wheels began to turn as though the driver intended to pull into Family Dollar, but the vehicle instead went straight. Upon contacting dispatch, Coates recognized Appellant's name as someone he previously arrested for possessing narcotics. Coates followed the vehicle and saw Appellant turn into a Dairy Queen parking lot and extinguish her vehicle's lights. Coates decided to circle the block, and when he returned to Dairy

Queen, the vehicle was gone. Upon returning to Family Dollar, Coates saw that the subject vehicle was again parked there. Coates detained Appellant, and after having his drug dog perform an open-air sniff of her vehicle, Coates arrested Appellant for possession of a controlled substance.

Appellant filed a pretrial motion to suppress the evidence obtained as a result of her detention, arguing that she was detained without probable cause or reasonable suspicion of an offense, and that the use of any tangible evidence seized without a warrant violated her rights under the United States Constitution and the Texas Constitution. At the hearing on the motion, the State argued that under the totality of the circumstances, Officer Coates had reasonable suspicion that other criminal activity was afoot, and his suspicion justified his detention of Appellant and his use of a drug dog. After the hearing, the trial court denied Appellant's motion to suppress. Appellant subsequently pleaded "guilty" and received deferred adjudication community supervision. This appeal followed.

## MOTION TO SUPPRESS

In her sole issue, Appellant argues that the trial court erred by denying her motion to suppress because Officer Coates lacked reasonable suspicion to justify detaining her and searching her vehicle.

### Standard of Review and Applicable Law

A defendant who alleges a Fourth Amendment violation bears the burden of producing some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). A defendant satisfies this initial burden of proof by establishing that a search or seizure occurred without a warrant. *Id*. "The burden then shifts to the State to prove that the search or seizure was nonetheless reasonable under the totality of the circumstances." *Id*. at 672-73.

Reasonable suspicion exists if a law enforcement officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged, is engaging, or soon will be engaging in criminal activity. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). In determining whether reasonable suspicion existed, courts analyze objective facts surrounding the detention, not the officer's subjective reasons for it. *Garcia v. State*, 827 S.W.2d 937, 943-44 (Tex. Crim. App. 1992). The

2

State need not establish with absolute certainty that an offense occurred to show reasonable suspicion. *Garcia*, 43 S.W.3d at 530.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010). We give almost total deference to the trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, but we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008); *see also Kerwick*, 393 S.W.3d at 273. At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Therefore, a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

We review de novo whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion of criminal activity. *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018). We must uphold the trial court's ruling on a motion to suppress if the ruling was supported by the record and was correct under any theory of law applicable to the case. *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003). In reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

**Analysis**

At the suppression hearing, Coates testified that Family Dollar's policy was to not allow people to walk to their cars without a police escort, so at approximately 10:00 p.m., he was in the Family Dollar parking lot waiting for the store to close. Coates explained that employees of Family Dollar had also requested that he contact the driver of a blue Tahoe that was parking in the store's parking lot overnight and ask the driver not to park in the store's lot after hours. A blue Tahoe approached that matched the vehicle's description and license plate number, and when Coates communicated with dispatch after seeing the license plate number, he recognized Appellant's name and recalled that he previously arrested her. Coates testified that the wheels of Appellant's vehicle were turned as though Appellant was about to enter the parking lot of Family Dollar, but

Coates believed that Appellant saw Coates's patrol car, so she instead drove straight, turned onto another street, and accelerated. Coates testified that he had reasonable suspicion that other criminal activity was afoot. Coates explained that his suspicion that Appellant was attempting to "duck and dodge" him was confirmed because he followed Appellant, and he saw that she eventually pulled into the darkest part of Dairy Queen's parking lot and turned off her vehicle's lights.

Coates's in-car camera captured video of him following Appellant as her vehicle traveled toward Dairy Queen and turned into the parking lot, and the video was admitted into evidence. Coates testified that because he thought Appellant might intend to get something to eat or drink, he continued around the block without stopping at Dairy Queen or making contact with her. After Coates circled the block and returned to Dairy Queen, he saw that Appellant's vehicle was gone, so he decided to return to his detail at Family Dollar. When Coates pulled into the parking lot of Family Dollar, he saw that Appellant's vehicle was parked there again, so he made contact with Appellant to tell her not to park there after hours. The trial court admitted into evidence a video recording of Coates's ensuing encounter with Appellant at Family Dollar.

At Family Dollar, Coates told Appellant why he was making contact with her, and Appellant told him that she was going to see her boyfriend, who lived about two blocks away. Coates explained that because he previously arrested Appellant for possession of marijuana at her boyfriend's residence, Coates was aware that Appellant had been criminally trespassed from said residence. Coates testified that his mission was no longer solely to inform Appellant that she could not park at Family Dollar. Rather, he was following up on why she was trying to "duck and dodge" him. Coates testified that he had reasonable suspicion because Appellant tried to "duck and dodge" him, and he recalled previously arresting her for possession of narcotics.

Coates asked Appellant if he could search her vehicle, and when Appellant declined, he detained her. Approximately seven minutes after Coates's initial contact with Appellant, he deployed his drug dog to conduct a free-air search of Appellant's vehicle. The dog alerted twice on the passenger side, and Coates explained that the dog's alert gave him probable cause to search Appellant's vehicle. Upon searching the vehicle, Coates found THC wax, marijuana, and a bag of pills. Coates testified that if Appellant had merely pulled into the parking lot of Family Dollar, he would not have deployed his drug dog, but Appellant's apparent attempts to avoid encountering him provided "reasonable suspicion to believe there was other criminal activity going on."

4

On appeal, Appellant contends that once Coates completed the purpose of his detention, which she maintains was solely to inform her not to park in Family Dollar's parking lot, his continued detention of her and deployment of his drug dog were not justified by reasonable suspicion. Appellant relies on *Rodriguez v. United States*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). In *Rodriguez*, the investigating officer, Officer Struble, gave Rodriguez a warning ticket for driving on the shoulder, and he then asked permission to walk his drug dog around the vehicle. *Id*. at 1613. When Rodriguez refused to consent, Struble detained Rodriguez until a second officer arrived. *Id*. Struble then deployed his dog, and the dog alerted to the presence of drugs in Rodriguez's vehicle. *Id*. A search of the vehicle revealed over fifty grams of methamphetamine. *Id*. Seven or eight minutes had elapsed between Rodriguez's receipt of the warning ticket and the dog's alert. *Id*. The Supreme Court held that without reasonable suspicion, extending the traffic stop to carry out a sniff by the drug dog violated the constitutional protections against unreasonable seizures; that is, the traffic stop became unlawful when prolonged beyond the time reasonably required to complete the mission of issuing a traffic ticket. *Id*. at 1614-15.

Appellant argues that the circumstances of her detention are analogous to the detention at issue in *Rodriguez*. We disagree. First, *Rodriguez* involved a traffic stop, but the instant case did not. Additionally, in *Rodriguez*, Struble issued a warning ticket to Rodriguez before deploying the drug dog, and Struble did not have reasonable suspicion to prolong the detention. In the instant case, Coates testified that he suspected that criminal activity might be afoot because Appellant attempted to avoid contact with him by deciding not to turn into the Family Dollar parking lot and then proceeding to Dairy Queen, where she parked in the darkest corner of the parking lot and extinguished her vehicle's lights. Coates also explained that he recalled having previously arrested Appellant for possession of narcotics. While a suspect's criminal history cannot be the sole basis for reasonable suspicion, it is a factor that may be considered in combination with other factors in determining whether reasonable suspicion existed. *Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012).

As discussed above, Coates testified that he had reasonable suspicion based upon both Appellant's attempts to avoid contact with him and his knowledge that she had previously been arrested for narcotics. Viewing the evidence in the light most favorable to the trial court's ruling and giving almost total deference to the trial court's findings on questions of historical fact and application-of-law-to-fact questions that turn on evaluation of credibility and demeanor, we

conclude that Coates had reasonable suspicion that Appellant was engaging in criminal activity, and the trial court therefore did not err by denying Appellant's motion to suppress. *See Cortez*, 543 S.W.3d at 204; *Hamal*, 390 S.W.3d at 308; *Kelly*, 204 S.W.3d at 818; *Garcia*, 43 S.W.3d at 530; *Ross*, 32 S.W.3d at 855. Accordingly, we overrule Appellant's sole issue.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered February 28, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 28, 2022**

**NO. 12-21-00055-CR**

**KACIE JANAE CHEEK,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

___

Appeal from the 349th District Court

of Anderson County, Texas (Tr.Ct.No. 349CR-19-34306)

___

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*